946 P.2d 975

Dennis MARSHALL and Paula Marshall, husband and wife, Plaintiffs–Respondents,

v.

Joseph A. BLAIR and Jeanne E. Blair, husband and wife, Defendants–Appellants.

No. 23439.

Supreme Court of Idaho, Twin Falls, March 1997 Term.

Aug. 14, 1997.

Rehearing Denied Nov. 24, 1997.

Thomsen & Stephens, P.A., Idaho Falls, for defendants–appellants. J. Michael Wheiler argued.

Moss & Esplin, Blackfoot, for plaintiffs–respondents. Thomas E. Moss argued.

TROUT, Chief Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This petition for review arises from the Court of Appeals' decision to affirm the district court's determination that Dennis and Paula Marshall (the Marshalls) established a prescriptive right to use a gravel roadway known as Kirwan Lane. The two parcels of real property that are involved in this suit have been owned by numerous people but, at one time, were owned entirely by the same person. Each parcel currently is served by Kirwan Lane, which provides several of the parcels that abut the roadway with the only access to a county road. *See* Map at **Appendix A**. Throughout the time that the two parcels in question have changed hands, all owners apparently agreed that Kirwan Lane existed and was available for use by all adjoining landowners. In 1993, however, Joseph and Jeanne Blair (the Blairs), who own the piece of property located where Kirwan Lane intersects with the county road, advised the Marshalls that they were no longer permitted to use Kirwan Lane.

No one knows how Kirwan Lane came into existence, however, at trial, the parties traced the use of the roadway as far back as 1944. E.E. Kirwan purchased the property now owned by the Blairs in 1927 and purchased the property now owned by the Marshalls in 1944.[1] Apparently, he used Kirwan Lane to access the property now owned by the Marshalls throughout the time that he owned it. In 1963, E.E. Kirwan sold the property now owned by the Blairs to Douglas Wray (Wray). Wray's contract later was assigned to other parties, and, in 1974, the Blairs obtained the interest. As for the property now owned by the Marshalls, E.E. Kirwan gifted it to his son, Jack Kirwan (Jack), in 1970. Three years later, Jack sold the property to B.R. Goodwin (Goodwin). In 1983, Goodwin sold the property to John Thueson (Thueson), who sold the property to the Marshalls in 1992.

Until 1983, Kirwan Lane provided the only access from the Marshalls' property to a public road. Thueson purchased a fifty-foot easement across the property lying to the west of the Marshalls' property in 1983 because Thueson planned to build a home and was required to obtain a fifty-foot easement to a public road in order to secure the building permit. Thueson, however, never intended to use the easement as access to a county road and likely would not have been able to use the easement for year-round access without first making considerable improvements,

---

1. The two parcels of property are not adjoining. The Marshalls' property lies southwest of the Blairs' property. E.E. Kirwan's sister-in-law, Dorthella Kirwan (Dorthella), and Dorthella's son, Burt Kirwan (Burt), own the property that borders the Blairs' property on the south and abuts the eastern side of Kirwan Lane. The Randalls own the property that borders the Marshalls' property on the north and abuts the western side of Kirwan Lane.

because the easement is merely a field road across the bottom of farm ground. In fact, at the time of this appeal, the field in which the easement is located is planted in potatoes, and, thus, Kirwan Lane currently provides the only improved access from the Marshalls' property to a county road.

The deed the Marshalls received from Thueson indicated on its face that it included an easement for access over Kirwan Lane. However, the deed from Goodwin to Thueson contained the first mention of such a right. Jack, nonetheless, testified at trial that, when he sold the property to Goodwin, he believed Goodwin's purchase included the right to use Kirwan Lane, despite the fact that the deed did not contain any language indicating that such a right was transferred.

When the Marshalls purchased the property in 1992, they immediately began construction of a house on the property. The Marshalls used Kirwan Lane to access their property and routed delivery of all construction materials for their home via Kirwan Lane. In March 1993, however, the Blairs had a survey prepared which revealed that the western boundary of the Blairs' property actually was the western side of Kirwan Lane, not the eastern side, as the Blairs previously had believed.[2] As a result of this new information, the Blairs placed a gate across Kirwan Lane that prevented the Marshalls from accessing their property. The Blairs informed the Marshalls that the Blairs owned the stretch of Kirwan Lane abutting the Blairs' property and advised the Marshalls that they did not have the Blairs' permission to use Kirwan Lane any longer. The Blairs further told the Marshalls that, because the Marshalls had access to another county road by virtue of the fifty-foot easement running across the property lying to the west of the Marshalls' property, it was not necessary for the Marshalls to use Kirwan Lane.

The Marshalls filed suit later that year, seeking a prescriptive easement over Kirwan Lane and an injunction to prevent the Blairs from continuing to interfere with the Marshalls' easement. The Marshalls later amended their complaint, additionally alleging that a boundary had been established by acquiescence. The Blairs filed a counterclaim, contending that they had acquired title to Kirwan Lane by adverse possession.

At trial, the parties disputed the nature of the use of Kirwan Lane. According to Dorthella, an occasional hunter or fisherman would seek permission to use the lane, but parties who owned property along Kirwan Lane, their employees, and various delivery persons historically had used Kirwan Lane without seeking permission. The Blairs, however, contested the testimony and alleged that Thueson sought permission from them to use Kirwan Lane. Thueson refuted the Blairs' contention,[3] although he testified that, after he bought property along Kirwan Lane, he asked Dorthella for a key to the locked cattle gate that she and her late husband had maintained across the lane abutting their property. The Blairs additionally asserted at trial that Goodwin asked for Jack's permission to use Kirwan Lane. Jack, however, testified that Goodwin never asked permission but simply told Jack that Goodwin intended to use Kirwan Lane to access his property and that Jack believed that Goodwin had a right to use the lane without seeking permission.

The testimony at trial also indicated that the Blairs' predecessors never believed that their ownership included any part of Kirwan Lane. Although Thueson and the Marshalls testified that they believed that the stretch of

2. When the Blairs purchased their property, they assumed that the fences on the property marked the boundaries. In fact, just as the western boundary erroneously had been fenced several yards to the east, the eastern boundary erroneously had been fenced several yards to the east. Thus, the amount of land that the Blairs believed they owned has not changed, but the location of the boundaries has. The only boundary the Blairs seek to correct, however, is the western boundary.

3. The district court found that the conversation between Thueson and the Blairs occurred between one and three years prior to Thueson's purchase of the property now owned by the Marshalls. Based upon the timing of this conversation, the district court surmised that Thueson was seeking permission to use Kirwan Lane for the sole purpose of accessing the property to view it before purchasing it.

Kirwan Lane abutting Dorthella's property was a private driveway that she owned, Thueson and the Marshalls never had any indication that the northern stretch was owned by the Blairs. The testimony at trial further demonstrated that, throughout the years, the parties who have owned property abutting Kirwan Lane have maintained and cared for the sections of the lane abutting their respective properties.

After trial and after viewing the property, the district court concluded that: (1) the Marshalls have a prescriptive easement, as well as an implied easement, allowing them use of Kirwan Lane; (2) there was no basis to uphold any boundary by agreement or acquiescence; and (3) the Blairs had not proved their claim of adverse possession. Furthermore, the district court refused to award attorney's fees to either party, reasoning that the suit was neither frivolous nor without foundation. The court, however, awarded costs to the Marshalls as the prevailing party.

The Blairs subsequently filed a motion to be permitted to block off the road to prevent further use of the lane by unauthorized users. The district court denied the motion. The court reasoned that the Blairs' no trespassing signs and their right to prosecute violators afforded sufficient protection and that a gate, therefore, was unnecessary.

The Blairs appealed the district court's decision, arguing that the district court erred because it applied a presumption of adverse, rather than permissive, use. According to the Blairs, the Marshalls used Kirwan Lane in common with the general public and Idaho case law negates a presumption of adverse use when the claimant's use of a way is in common with the owner and others. The Blairs additionally argued that the district court erred when it refused to award costs to the Blairs, because the Blairs prevailed on the Marshalls' boundary by acquiescence claim.

A majority of the Court of Appeals affirmed the district court's decision finding a prescriptive easement and denying costs. *See Marshall v. Blair,* 130 Idaho 684, 946 P.2d 984 (App.1996). The Blairs now ask this Court to review the Court of Appeals'

decision. Although we agree with the lower courts' conclusion that the Marshalls have established a prescriptive right to use Kirwan Lane, we reach that conclusion through a different analysis.

## II.

## TRIAL ISSUES

### A. Standard Of Review

In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals. *Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1993). However, this Court directly reviews the decision of the district court. *Id.* at 49, 867 P.2d at 923. A district court's decision that a claimant has established a private prescriptive easement presents entwined questions of law and fact. *Chen v. Conway,* 121 Idaho 1000, 1004–05, 829 P.2d 1349, 1353–54 (1992).

On appeal, this Court will not set aside findings of fact, unless they are clearly erroneous. I.R.C.P. 52(a). Thus, if a district court's findings of fact are supported by substantial and competent, although conflicting, evidence, this Court will not disturb those findings. *Thompson v. Fairchild,* 93 Idaho 584, 587, 468 P.2d 316, 319 (1970). Furthermore, this Court gives due regard to the district court's special opportunity to judge the credibility of the witnesses who personally appeared before the court. I.R.C.P. 52(a). Additionally, we will not substitute our view of the facts for the view of the district court. *Deer Creek, Inc. v. Hibbard,* 94 Idaho 533, 535, 493 P.2d 392, 394 (1972).

Unlike our review of the district court's findings of fact, we exercise free review over the district court's conclusions of law. *O'Loughlin v. Circle A Constr.,* 112 Idaho 1048, 1051, 739 P.2d 347, 350 (1987). As a result, this Court may substitute its view for that of the district court on a legal issue. Standards of Appellate Review in State and Federal Courts, IDAHO APPELLATE HANDBOOK § 4.2 (1996). Consequently, when reviewing a district court's

determination that a private prescriptive easement exists, we must determine whether the district court properly applied the legal requirements for a prescriptive easement to the facts the district court found. *Chen*, 121 Idaho at 1004–05, 829 P.2d at 1353–54.

## B. Prescriptive Easement

■ In order to establish a private prescriptive easement, a claimant must present reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years. *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973). *See also* I.C. § 5–203. Under claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement. *Cox v. Cox*, 84 Idaho 513, 521–22, 373 P.2d 929, 934 (1962). Consequently, a prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, because the use, by definition, was not adverse to the rights of the owner. *West*, 95 Idaho at 557, 511 P.2d at 1333.

### 1. General public use and the presumption of permissive use

■ Generally, proof of open, notorious, continuous, and uninterrupted use of the way for the prescriptive period, without evidence as to how the use began, raises a presumption that the use was adverse and under claim of right. *Deer Creek*, 94 Idaho at 534–35, 493 P.2d at 393–94. Proof of all of these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimant's use was permissive. *Id.* at 534–35, 493 P.2d at 393–94. This Court has articulated exceptions to this general rule. The exceptions allow a party to rebut the presumption of adverse use in order to demonstrate that the use was permissive. In *Simmons v. Perkins*, 63 Idaho 136, 118 P.2d 740 (1941), for example, this Court held that "use of a driveway in common with the owner and the general public, *in the absence of some decisive act on the user's part indicating a separate and exclusive use on his part* negatives any presumption of individual right

therein in his favor." *Id.* at 144, 118 P.2d at 744 (emphasis added). This Court further explained in *Simmons* that use of a roadway must invade or infringe on the owner's rights in order for the use to be considered adverse and, thus, to ripen into a prescriptive right of way. *Id.* at 144, 118 P.2d at 744.

■ The evidence presented at trial in the present case demonstrated that no one knew how the use of Kirwan Lane began. Thus, a presumption of adverse use arose, which shifted the burden of proving that the use was permissive to the Blairs. *Deer Creek*, 94 Idaho at 534–35, 493 P.2d at 393–94. The Blairs contend that use of Kirwan Lane by the employees and farmhands of neighboring landowners, sportsmen, milkmen, various delivery people, and customers of Burt's upholstery business constituted general public use. Therefore, according to the Blairs, the district court committed reversible error when it failed to recognize this as general public use and, accordingly, failed to apply the presumption of permissive use, as set forth in *Simmons*.

■ Initially, we note that substantial and competent evidence existed in the record to support the district court's findings that the Blairs had not given express permission to the Marshalls or their predecessors to use Kirwan Lane and that neither the Marshalls nor their predecessors had sought permission to use the lane. Consequently, the issue we must decide is whether use of a roadway by adjoining landowners' invitees and guests falls within the definition of general public use, therefore negating any presumption of adverse use. After examining *Cardenas v. Kurpjuweit*, 116 Idaho 739, 779 P.2d 414 (1989), we have determined that such use indeed must be considered general public use. Thus, we agree that the district court erred when it failed to find that the use of Kirwan Lane by non-landowners was general public use and that the district court erred when it failed to apply the presumption of permissive use.

In *Cardenas*, this Court implicitly found that use of the roadway in question by a motorized mail carrier and an adjoining landowner's laundry clientele was considered general public use under *Simmons*. *See Cardenas*, 116 Idaho at 743, 779 P.2d at 418. *See also Cardenas v. Kurpjuweit*, 114 Idaho

79, 82, 753 P.2d 290, 293 (Ct.App.1988). We, however, ultimately determined that the claimant's act of tearing down a fence was an independent, decisive act indicating a separate and exclusive use, and, thus, we concluded that this rebutted any presumption of permissive use by establishing the claimant's open, notorious, and exclusive use of the driveway. *Cardenas,* 116 Idaho at 743, 779 P.2d at 418. *See also Simmons,* 63 Idaho at 144, 118 P.2d at 744. Although we did not expressly find that use by the non-landowners was public use, *a fortiori,* we had to make an initial determination that there was general public use giving rise to a presumption of permissive use before concluding that the claimant had rebutted the presumption of permissive use and had established a prescriptive right.

As this discussion demonstrates, use of Kirwan Lane by employees and customers of parties who owned property along Kirwan Lane, as well as use by various delivery persons, must be considered general public use. Accordingly, a presumption that the Marshalls used Kirwan Lane with the Blairs' permission arose, and the burden shifted to the Marshalls to demonstrate that they had performed some independent, decisive act indicating a separate and exclusive use of Kirwan Lane. *See Simmons,* 63 Idaho at 144, 118 P.2d at 744. Because the district court did not conclude that members of the general public had used Kirwan Lane, the district court did not reach the issue of whether the Marshalls successfully rebutted the presumption of permissive use. We, nevertheless, are required to address that legal issue by analyzing the facts found by the district court.

## 2. Rebutting the presumption of permissive use

 The district court found that the roadway extending to the Marshalls' property was used primarily for agricultural purposes between 1939 and 1992 and that there were no residences on the property during that time. It was only after the Marshalls built their home that the lane to their property was used for a residential, rather than agricultural, purpose. Furthermore, in discussing the Marshalls' construction of their home, the district court noted that all construction materials for the Marshalls' home

were delivered via Kirwan Lane. The district court also found that Thueson built an entrance gateway where Kirwan Lane enters onto the property now owned by the Marshalls. The district court found that the Blairs had posted no trespassing signs at the entrance to Kirwan Lane and that the Marshalls' use in derogation of these signs was open, notorious, and readily observable. Finally, the district court found that the Marshalls and their predecessors have cared for that portion of Kirwan Lane beyond Dorthella's property. The record sustains these findings. We believe that these factors, when considered in conjunction with one another, rebut any presumption of permissive use.

Our holding in *Cardenas* supports such a conclusion. In that case, we determined that the claimant's act of tearing down a fence approximately one year before the suit was filed was a decisive act signifying a separate use and that this act rebutted any presumption of permissive use that arose by virtue of public use of the roadway. However, we also recognized that, for more than twenty-five years, the claimant had used the roadway at issue for access and parking and had applied gravel to the roadway to prevent weeds from growing in the parking areas. *Cardenas,* 116 Idaho at 743, 779 P.2d at 418. Thus, we essentially concluded that the claimant had satisfied the prima facie case for establishing a prescriptive right before the claimant even tore down the fence and simply found that the act of tearing down the fence established with absolute certainty that the claimant's use was not under grant of permission. The case at hand is similar. The Marshalls' use, when tacked to their predecessors' use, was open, notorious, continuous, uninterrupted, under a claim of right, and with the Blairs' knowledge for the prescriptive period of five years. Moreover, Thueson's construction of the gate, the Marshalls' different and additional use of the lane for access to their home, Thueson's and the Marshalls' disregard of the no trespassing signs, and their care for that portion of the lane certainly establish that the Marshalls' use was not under grant of permission and was in excess of the use by the general public. As a result, we hold that the Marshalls rebutted any presumption of permissive use and that they

are entitled to a prescriptive right to use Kirwan Lane for access to and from their home and for any related agricultural pursuits that they conduct on their property.

### C. Right To Construct A Gate

The Blairs contend that, if this Court upholds the district court's conclusion that the Marshalls have established a prescriptive right to use Kirwan Lane, the Blairs are entitled to construct a gate across the lane in order to prevent further prescriptive loss of their property. The district court instructed the Blairs to remove the gate and fence that they had constructed at the southern end of their property. On appeal, the Blairs assert that this was error.

■■■■ According to this Court's decisions in *Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870 (1977), and *Wood v. Brown*, 108 Idaho 739, 702 P.2d 777 (1985), the Blairs may construct a gate across Kirwan Lane to limit use of the lane to those with a right to use the roadway, provided the gate does not obstruct any easement holder's use. *See also Boydstun Beach Ass'n v. Allen*, 111 Idaho 370, 723 P.2d 914 (Ct.App.1986). There is nothing in this Court's case law that prohibits a servient estate holder from limiting use of the easement to authorized users. *Gibbens* clearly concerned the issue of controlling livestock, however *Wood* concerned access for residential and agricultural purposes and, therefore, is similar to the present case. In *Wood*, this Court concluded that a servient estate holder was entitled to make "reasonable regulations" concerning the dominant estate holder's use of the easement and further explained that the record was insufficient for the district court to define those regulations. *Wood*, 108 Idaho at 742, 702 P.2d at 780.

■■■■ There is no indication in the record that the Marshalls made any showing that the gate was unreasonable or that the gate was unduly restrictive. Consequently, there was not a sufficient record from which the district court could conclude that it was inappropriate for the Blairs to install the gate. We, therefore, hold that the district court erred when it determined that the Blairs were not entitled to install a gate. We caution, however, that the gate may not un-duly restrict authorized use of the roadway. Thus, the gate must be easy to open and wide enough to accommodate the Marshalls' and all other users' uses. *See Gibbens*, 98 Idaho at 640, 570 P.2d at 877.

### D. Easement By Implication

The Blairs contend that the district court erred when it granted the Marshalls an easement by implication. Because we affirm the district court's determination that the Marshalls have a prescriptive easement over Kirwan Lane, we find it unnecessary to address the district court's alternative holding that there was an easement by implication.

### E. Costs As To The Boundary By Acquiescence Claim

■■■■ The Blairs claim that they were the prevailing party on the Marshalls' boundary by acquiescence claim and that the district court erred when it denied them the costs associated with defending that claim. *See* I.R.C.P. 54(d)(1)(B). The determination of who is a prevailing party is within the sound discretion of the district court and, absent an abuse of discretion, the district court's award of costs will be upheld. *Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990). *See also Sun Valley Shopping Ctr., Inc. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In the present case, the district court perceived the issue as one of discretion and separately analyzed each claim. *See Ramco v. H–K Contractors, Inc.* 118 Idaho 108, 113, 794 P.2d 1381, 1386 (1990). Additionally, the district court reached its conclusion to deny costs by reasoning that it could not ascertain that any portion of the costs requested by the Blairs was attributable solely to the boundary by acquiescence claim. Thus, we conclude that the district court did not abuse its discretion when it refused to award the Blairs costs relating to their defense of the boundary by acquiescence claim.

### III. CONCLUSION

We affirm the district court's judgment relating to the prescriptive easement, however we vacate the judgment relating to the installation of the gate and remand the case to the district court for further proceedings

in accordance with this opinion. We additionally affirm the district court's denial of costs to the Blairs and we award costs on appeal to the Marshalls.

JOHNSON, SILAK and SCHROEDER, JJ., concur.

McDEVITT, J., concurs in result.