8 P.3d 657

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John B. CAMP, Defendant–Appellant.**

**No. 25151.**

Court of Appeals of Idaho.

April 12, 2000.

Rehearing Denied May 24, 2000.

Review Denied Sept. 15, 2000.

Churchill Law Offices, Boise, for appellant. Gary L. Neal argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

SCHWARTZMAN, Judge.

John Camp appeals from the memorandum opinion and order of the district court affirming his conviction for trespass following a jury trial in the magistrate division of the district court. Among other issues, Camp argues that his conviction should be vacated because he possessed an easement and/or license to use the property upon which he trespassed. For the reasons set forth below, we affirm Camp's conviction and sentence for trespass.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On December 6, 1997, Camp, with his horse, was at the locked and posted gate to PM Square, a rural development, when Brad Tracy, a property owner in the development, drove up to the gate on his way to his property. Tracy told Camp that the road was private and refused to admit him. Camp said that Tracy was depriving him of his constitutional rights, that he was "tired of this [expletive deleted]" and "I'm going through." Camp then got on his horse, rode through a gate on an adjacent landowner's property, through a second gate and then onto the road through the PM Square development. Tracy followed Camp up the road to Tracy's property. There, Tracy observed Camp on horseback riding over his property just off the road. Tracy signed a criminal citation charging Camp with trespass, I.C. § 18–7008, upon Tracy's property at 1892 Exeter Way within the PM Square development. Camp pled not guilty and a jury trial was held.

At trial, Camp attempted to raise, as affirmative defenses, claims that he had a license or easement based on various theories. The trial court did not permit Camp to present evidence of an oral license, but did permit Camp to make an offer of proof without restriction.

Tracy testified to the above facts. Tracy further explained that Camp did not own any property in the PM Square development and had no right to access the road for public land access because it did not lead to any public land. Tracy affirmed that only Carlos Weed and PM Square, each with a recorded easement, could use the road. Tracy's deed, reserving easements in favor of PM Square and Carlos Weed, was admitted as part of an offer of proof of Camp's theory that Mr. Weed had given him permission to use his easement. Tracy testified that Camp had no right to use Weed's easement, which was a one-time easement to build a road, log Weed's land and restore the property, all of which had been done. Tracy recalled a discussion with Camp about access to the development road, but no agreement was ever reached.

Tracy also testified that there are eight "keep out," "private property," and "no trespassing" signs between the gate to the PM Square development and Tracy's property: two on the gate to the development; one on the telephone pole next to the gate; one on an apple tree up the road; two more on each side of the road farther up; one on a log on the right hand side of the road marking Tracy's property and two more on his driveway gate.

Camp testified that on December 6, he got to the PM Square road by going through a neighboring land owner's gate, just off the PM Square road, crossing the adjacent land and then entering the PM Square road. Camp admitted that he saw the "no trespassing" signs, but said he did not believe they applied to him.

Regarding his public easement theory, Camp testified that the PM Square road was public access to federal lands he had used since 1952 as well as to condition his horses since 1985, and that an aerial photo in the county assessor's office described the PM Square road as a public easement. Jack Frasier, another neighbor with land bordering the PM Square development, testified that his lands surround the PM Square development on three sides, and that the Payette National Forest and a forty-acre tract belonging to Carlos Weed were located east of his property. In rebuttal, and over Camp's objection, Doug Kesler, a deputy county assessor, testified that the records and aerial map in the assessor's office did not

indicate any county easement or interest in the PM Square road.

Camp also claimed that he had a right to use the PM Square road to monitor water and prevent theft from the Sorensen/Rinehart ditch, a lateral from Cool Creek, which runs through the PM Square development, based upon a claimed water right. On cross-examination, Camp acknowledged that he was not irrigating on December 6, the date of the alleged trespass. In rebuttal, David Lawrence, the president of the Sorensen/Rinehart ditch water users association, testified that Camp was not a shareholder and that his collection of runoff from the ditch did not give him an interest in the association's water.

In support of his oral license theory, Camp claimed Frasier had given him permission to use the PM Square road because Frasier had given him access to a key to Frasier's back gate, separating his land from the PM Square property. Frasier testified that he did so because he would rather have Camp go through the gate than take down his fence to get across with his horse. Frasier stated that he rented Tracy's land in the spring to graze his cattle and that he had the right to enter Tracy's land to care for his cattle during that time.[1] Frasier acknowledged that he sometimes used the PM Square road to access his gate and fence line, but that he contacted the realtor who sold the PM Square lots before doing so.

Finally, Mary Dickson, the daughter of Carlos Weed, testified that her father had given Camp oral permission to use his easement over PM Square. She said that, since her parents had died, she had neither retracted Weed's permission nor given Camp permission to continue using Weed's easement.

Thereafter, the jury was instructed and it returned a verdict of guilty on the trespass charge. Camp filed a motion for judgment of acquittal, which was denied. At sentencing, the court explained that, while Camp had a subjective belief that the road was public, such was not a defense. The court imposed a $300.00 fine, with $275.00 suspended, court costs, six months in jail, suspended with two years probation. The terms of probation prohibited Camp from trespassing on anyone's land.

Camp appealed. The district court affirmed Camp's conviction. Camp appeals again. We affirm.

## II.

## GENERAL STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bitt*, 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct. App.1993).

## III.

## ANALYSIS

**A. The Propriety of Camp's Presentation Of His Easement And License Theories As Affirmative Defenses At Trial Without Prior Notice**

■ We have before us a situation in which, in the middle of the criminal trial and without prior notice to the magistrate or the state, the defendant sought to demonstrate that he possessed any one of several property interests or contract rights in the complainant's easement to his real property. Establishment of legally complex property and contract interests is more appropriate in a civil action to quiet title or for declaratory judgment than a criminal proceeding. Each of these interests is, in this situation, an affirmative defense with multiple elements. To meet the burden of production, Camp had to ensure that a reasonable view of the record supported the elements of his affirmative defenses of easements and licenses, i.e., he had to present facts sufficient to make out a

---

1. Tracy had testified that Frasier leased his land from mid-April through May as pasture for his cattle and had no right to use his land in December when the instant "trespass" occurred.

*prima facie* case relevant to each defense.[2] Furthermore, Camp did not request or tender any specific jury instructions on his claimed defenses of license, prescriptive easement, water right or public right-of-way, other than an overly broad instruction on the definition of an easement which the district court correctly rejected as an incorrect statement of the law.

■ What is problematic in this case is Camp's attempt to raise all of these affirmative defenses for the first time in the middle of trial without prior notice and an opportunity to be heard.[3] We must now consider whether a reasonable view of the trial record supports any one of Camp's easement or license theories.

### 1. Prescriptive easement

■ In order for Camp to be entitled to a jury instruction on the affirmative defense of prescriptive easement, Camp had to present facts sufficient to make out a *prima facie* case of such an easement. He had to establish his open, notorious, continuous, uninterrupted use as a true owner, under a claim of right, with the knowledge of the owner of the servient tenement, for the five-year prescriptive period. *Elder v. Northwest Timber Co.,* 101 Idaho 356, 359, 613 P.2d 367, 370 (1980);

*West v. Smith,* 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973); *Deer Creek, Inc. v. Hibbard,* 94 Idaho 533, 493 P.2d 392 (1972); I.C. § 5–203. Camp's testimony was that he had used the road since 1985 to condition his horses.

■ The magistrate found that the record contained no evidence to support a conclusion that Camp's use had been exclusive or that there was a dominant estate. Additionally, Camp failed to present evidence that his usage of the road was both continuous for the five-year prescriptive period and constituted some actual invasion or infringement of Tracy's private easement or of a public easement.[4] Any of these grounds would be a sufficient basis for upholding the trial court's determination that Camp did not possess a prescriptive easement to Tracy's land. Thus, the magistrate did not err in rejecting Camp's affirmative defense of prescriptive easement.

### 2. Public right-of-way theory

■ Camp also testified that the PM Square road was public access to federal lands, and that an aerial photo in the county assessor's office described the PM Square road as a public easement. The magistrate

---

**2.** The burden of production, i.e., of raising a *prima facie* defense, is on the defendant, e.g. consent, duress, entrapment, self-defense, necessity, etc. *State v. Canelo,* 129 Idaho 386, 391–92, 924 P.2d 1230, 1235–36 (Ct.App.1996) (unless a reasonable view of the evidence would support the defendant's theory, the defendant is not entitled to a jury instruction on that defense).

**3.** This placed a particularly onerous burden on the trial judge to ensure that the jury was not mislead or confused by the flurry of legal theories bandied about in front of them. A criminal proceeding is not the most appropriate forum to litigate the existence of easements and other interests in real property. Prescriptive easements, for example, must be proven by clear and convincing evidence. *Marshall v. Blair,* 130 Idaho 675, 680, 946 P.2d 975, 980 (1997); *West v. Smith,* 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973). Thus, assuming that the defendant bears only the burden of production, an acquittal based on an easement theory or other interest in real property will not conclusively or presumptively establish such. Rather, the existence of such an interest can only be established by meeting the appropriate standard of proof as set forth in our civil jurisprudence. In the absence of a civil

quiet title or declaratory judgment action, we offer the following suggestion. A defendant should raise all property interests and contract rights offered as affirmative defenses to a charge of trespass in a motion in limine well before trial, thus permitting the court to consider and address the merits of each defense in turn before the risk of confusion arises. Then, only if the defendant can make out a *prima facie* case as to each defense, should the jury hear the evidence and be instructed thereon.

**4.** Mere use alone is insufficient, independent of some additional act signifying to the owner that there is an adverse user's claim. *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941). Acts signifying adverse use include performing some maintenance or improvement upon the land in question, using the land in a manner openly against the owner's use, or expressing to the owner a claim of right to use his land. As stated in *Simmons:* "The use of a driveway in common with the owner and the general public, in the absence of some decisive act on the user's part indicating a separate and exclusive use on his part negatives any presumption of individual right therein in his favor." 63 Idaho at 144, 118 P.2d at 744.

ruled that there was no evidence of adverse use by the public giving notice to the true owner of a claim of public right-of-way to get to public land. We agree. The testimony of Tracy and Frasier was that the PM Square road was not a route to public lands. Additionally, in rebuttal, Doug Kesler, a deputy county assessor, testified that the records and aerial map in the assessor's office did not indicate any county easement or interest in the PM Square development road. Again, no reasonable view of the evidence supported a public right-of-way instruction. Thus, the magistrate did not err in rejecting Camp's affirmative defense of public right-of-way.

### 3. Right of access by virtue of a water right

 At trial, David Lawrence, the president of the Sorensen/Rinehart ditch water users association, testified that Camp was not a shareholder. Lawrence also testified that Camp's collection of runoff from the ditch that occasionally reached his land did not confirm upon him any interest in the association's water. Lawrence also testified that the ditch did not terminate into the pond on Camp's property. This testimony was consistent with Idaho case law. *See Hidden Springs Trout Ranch, Inc. v. Hagerman Water Users, Inc.*, 101 Idaho 677, 680, 619 P.2d 1130, 1133 (1980) (generally, an appropriator retains the right to reclaim surface waste and seepage while adjacent user of runoff may not force the appropriator to waste water in order to ensure his supply). The magistrate correctly concluded that Camp's collection of runoff and waste water afforded him no interest in the Sorensen/Rinehart ditch nor a right-of-way to monitor its flow.

### 4. Oral license from Frasier or Weed

The magistrate concluded that the trial testimony disproved Camp's license theory. The magistrate also concluded that any license Camp received from Weed was extinguished upon Weed's death and that Camp had failed to present evidence that Weed was alive on the date the Camp committed the instant offense.

 Camp argues that he had Frasier's permission to use the PM Square road because Frasier had given him access to a key to Frasier's back gate onto the PM Square development area. Frasier had testified that he told Camp where he could find the key to the gate that separates his land from the PM Square property so that Camp would not take down his fence to get across. Moreover, Tracy had testified that Frasier leased Tracy's land from mid-April through May as pasture for Frasier's cattle and had no right to use Tracy's land in December.

 Camp also claims that Carlos Weed had given him permission to use Weed's easement. While Tracy testified that he purchased his property subject to easements in favor of PM Square and Carlos Weed, the location, nature and scope of any interest Weed may have had in PM Square is unclear on the record. In addition, a license is only binding between the parties and expires upon the death of either party. *See* 7 THOMPSON ON REAL PROPERTY, § 60.03(a)(7)(iv), at 420–21 (David A. Thomas ed., 1994). On this point, Mary Dickson, the daughter of Carlos Weed, testified that, before his death, Weed told her he gave Camp oral permission to use his easement over PM Square and that after his death she had neither retracted nor extended Weed's permission. Thus, Camp had to present some evidence that Weed was alive on December 6 when he entered the PM Square road. He failed to do so.

Accordingly, the magistrate correctly concluded that Camp had failed to establish facts supporting the existence of an oral license from either Frasier or Weed.

### B. Good Faith As A Defense to Trespass

 Camp claims that he had a good faith belief in his right to use the PM Square road. The magistrate implicitly rejected Camp's claim of good faith as a defense to trespass. We hold that Camp's affirmative defense of subjective, good faith belief is irrelevant because the word "willful" as used in the trespassing statute refers only to a willingness to commit the act and does not require any intent to violate the law. I.C. § 18–101(1). Camp's subjective belief in a right of access did not negate his intent to

enter upon the land of another. He knew that Tracy and others had interests in real property in the PM Square development and sought to exclude him. As explained in *State v. Missamore*, 119 Idaho 27, 31, 803 P.2d 528, 532 (1990), trespass is willful if done with the purpose or willingness to commit the act. Here, the act was entering upon the posted PM Square development road and Tracy's lands just off the side of the road after being told the property was private and that he could not enter. I.C. § 18–7008(8)/(9). Camp's statement to Tracy–"I'm going through"–is evidence that it was his purpose to enter the property Tracy had told him was private and refused to allow him to enter. The mere fact that he believed he had a right to use the road does not bar his conviction. Such was essentially a mistake of law which did not negate his intent to enter where he had been expressly denied permission to enter. *See and compare State v. Fox*, 124 Idaho 924, 926, 866 P.2d 181, 183 (1993) (since I.C. § 37–2732(c) of the Uniform Controlled Substances Act does not expressly require any mental element and I.C. § 18–114 only requires a general intent, i.e., the knowledge that one is in possession of the substance, the defendant's claim that he did not know possession of ephedrine was illegal was merely a claimed mistake of law and did not disprove his criminal intent). Consequently, the magistrate was correct in rejecting Camp's claim that good faith was a defense to trespass.

## C. The District Court Properly Permitted Doug Kesler, A Member Of The Jury Pool Who Was Not Selected As A Juror, To Be Called As A Rebuttal Witness

 Camp asserts that I.C. § 9–204 precluded Kesler from testifying as a rebuttal witness. Since this issue involves the meaning and application of an Idaho statute, we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990). Idaho Code § 9–204 gives the court discretion to order a suspension or postponement of the trial where a juror or the judge is called as a witness. Here, Kesler was never seated as a member of the juror panel. Thus, I.C. § 9–204 is inapplicable. Accordingly, the trial court correctly overruled Camp's objection to the state calling Doug Kesler as a witness on the ground that he had been on the jury panel.

## D. Camp's Claims That The Trial Court Improperly Admitted Three Photographs And Granted The State's Request For A Few Minutes To Prepare For Rebuttal Are Not Properly Before This Court On Appeal

 Initially we note that this issue of the admissibility of state's exhibit 3 was not raised to the district court in the intermediate appeal. An issue not raised at trial or on intermediate appeal may not be raised at a subsequent stage of the appellate process, unless the alleged error constitutes "fundamental error." *State v. Lavy*, 121 Idaho 842, 828 P.2d 871 (1992); *State v. Bailey*, 117 Idaho 941, 943, 792 P.2d 966, 968 (Ct.App. 1990). We will not presume that this issue raises a question of fundamental error since it relates only to the date when the photographs in question were taken and testimony about the language on and placement of signs.

Additionally, we note that Camp had the opportunity to present evidence of the contents of an aerial photo in the county assessor's office in his case-in-chief and failed to do so. Camp cites no statutory or case law supporting his argument that the court abused its discretion by either giving the state a recess or denying his request to try to procure the aerial photo. The issue, which is not sufficiently presented for appellate review, will not be considered. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

## E. The Issue of Whether Camp's Sentence Was Excessive Is Moot

On February 27, 1998, Camp received a two-year suspended sentence from which he appeals. We note that the sentence has not been stayed and that the two-year term of probation has now expired. Camp's sentencing claim is now moot and, therefore, will not be addressed.

## IV.

### CONCLUSION

Camp has failed to demonstrate error in the way his trial was conducted. Accordingly, we affirm Camp's judgment of conviction and sentence for trespass.

Chief Judge PERRY and Judge Pro Tem EISMANN concur.