# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44155

JOHN E. FUQUAY; CLINTON WARD )
FUQUAY; and HAILEY ROSE FUQUAY, )
)
    Plaintiffs-Counterdefendants- )
    Appellants, )
v. )
)      Boise, May 2017 Term
SUSIE LOW and CAL LOW, )
)      2017 Opinion No. 76
    Defendants-Respondents, )
and )      Filed: June 29, 2017
)
GILBERT KING, as Trustee of the )      Karel A. Lehrman, Clerk
HEART K RANCH TRUST UTA )
DECEMBER 28, 2012; THE ESTATE OF )
GORDON G. KING; and ROSE M. KING, )
as Beneficiary of the HEART K RANCH )
TRUST UTA DECEMBER 28, 2012, )
)
    Defendants-Counterclaimants- )
    Respondents, )
and )
)
AVCO FINANCIAL SERVICES OF IDAHO )
FALLS; and FIRST AMERICAN TITLE )
INSURANCE COMPANY, )
)
    Defendants. )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. Hon. Thomas J. Ryan, District Judge.

The judgment of the district court is affirmed.

Fidelity National Law Group, Seattle, Washington, for appellants. Matthew R. Cleverley argued.

Sawtooth Law Offices, Boise, for respondents Low. S. Bryce Farris argued.

Ronald P. Rainey, Caldwell, for respondents King.

_____

HORTON, Justice.

John Fuquay, Clinton Fuquay, and Hailey Fuquay (the Fuquays), appeal the district court's grant of summary judgment to Gilbert King, as Trustee of the Heart K Ranch Trust, the Estate of Gordon King, Rose King (the Kings), Susie Low, and Cal Low (the Lows), and the denial of the Fuquays' motion for reconsideration in a property dispute concerning an alleged prescriptive easement in favor of the Fuquays across the Kings' and Lows' property. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

King Lane is a private, all-weather road in Owyhee County about one-half mile in length. It is lined by two barbed wire fences and it runs in an east-west direction connecting with Oreana Loop Road on the east end and Castle Lane on the west end. Castle Lane then continues southward until it connects with Oreana Loop Road. The Kings own the parcel of land to the north of King Lane, and the Lows own the parcel of land to the south of King Lane. The Lows purchased their property in 2006 from Samuel Steiner. The Fuquays own the parcels of land to the west of King Lane where it ends and connects with Castle Lane. The degree to which King Lane crosses over either the King property or the Low property is not known; however, it is undisputed that King Lane crosses portions of each property.

The Kings purchased their property on September 17, 1973. According to Rose King, at the time the Kings purchased the property, "King Lane was only a path through grass and weeds and was wet and muddy most of the year." According to Samuel Steiner, the Lows' predecessor, "during wet weather" King Lane was "pretty difficult to get through." Starting in 1973, the Kings hauled rocks to build a base for King Lane and over the years improved it to the point where it could be used consistently for the Kings' farming needs. In 1982, the Kings sold their property to Zane Block, but repossessed the property in 1986. According to Rose King, it was impossible to cross King Lane in a large truck until 1988–89 when a welded barrel culvert under King Lane was replaced by a concrete culvert.

At various times throughout the year, the Kings graze cattle over King Lane. Until 2014, the Kings had barbed wire gates on both the east and west ends of King Lane to enclose their livestock. Anyone attempting to use King Lane had to stop, open, and then close the gates. In 2014, the Kings placed large iron gates across each end of King Lane.

The Fuquays purchased their property in 1977. Contrary to Rose King's testimony, the Fuquays claim that they have continuously used large semi-trucks, cattle trucks, farm vehicles, and personal vehicles to cross King Lane since 1977. In 2014, John Fuquay divided the Fuquay

property into parcels for sale. At that time, the Fuquays discovered that there was no recorded easement for the benefit of the Fuquay property for access by way of King Lane. In the summer of 2014, a dispute also arose between the Kings and the Fuquays regarding the iron gates that the Kings placed at each end of King Lane.

On August 11, 2014, the Fuquays filed a complaint against the Kings and the Lows seeking a declaratory judgment for a prescriptive easement across King Lane. On September 4, 2014, the Fuquays filed a motion for a temporary restraining order to enjoin the Kings from blocking their access to King Lane. The district court granted the Fuquays' request for a temporary restraining order and set a hearing for preliminary injunction. Following that hearing, the district court denied the Fuquays' request for temporary injunction.

The Fuquays filed a motion for summary judgment against the Lows; however, the Fuquays subsequently withdrew the motion. The Kings then moved for summary judgment. On March 25, 2015, the district court denied the Kings' motion for summary judgment, finding that that there was a material issue of fact as to when the Fuquays' claimed adverse use of King Lane began. On March 30, 2015, the Fuquays filed an amended complaint.

On April 7, 2015, the Kings filed a motion for reconsideration under Idaho Rule of Civil Procedure 11(a)(2)(B)[1] arguing that under Idaho's joint-use-in-common rule, the Fuquays' use of King Lane was presumptively permissive and that the Fuquays failed to present any evidence of "adverse" use to rebut that presumption. On June 19, 2015, the district court granted the Kings' motion for reconsideration, concluding that the Fuquays failed to make any showing that their use of King Lane was adverse use under a claim of right; an essential element required to create a prescriptive easement. The district court then entered judgment in favor of the Kings on July 8, 2015. On July 15, 2015, the Lows moved for partial summary judgment raising the same arguments as the Kings. On September 21, 2015, the district court granted the Lows' motion for partial summary judgment after concluding that their position was legally identical to the Kings.

On July 6, 2015, the Fuquays moved for reconsideration of the district court's grant of summary judgment to the Kings. The Fuquays argued that the district court applied the wrong presumption in its analysis and that there was conflicting evidence in the record as to whether the Fuquays' use of King Lane was "in-common" with the Kings or "adverse." On September 11,

---

[1] Our citations to the Idaho Rules of Civil Procedure in this opinion relate to the rules in effect at the time of the district court's decision. Idaho Rule of Civil Procedure 11.2(b), effective July 1, 2016, now governs motions for reconsideration.

2015, the district court issued its memorandum decision denying the Fuquays' motion for reconsideration. The district court concluded that because the Kings had annually improved King Lane since 1973 to create an all-weather roadway, the correct presumption was that of permissive use. The district court further concluded the Fuquays failed to present evidence that their use of King Lane interfered in any way with the Kings' use of the roadway. On December 21, 2015, the district court entered it judgment as to the claims between the Fuquays and the Lows. The Fuquays timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002).

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.*

> When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences.

*Intermountain Forest Mgmt., Inc. v. Louisiana-Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001) (internal citations omitted).

## III. ANALYSIS

4

The Fuquays argue the district court erred by not applying the legal presumption that their use of King Lane was adverse, that the Kings failed to present any evidence that the use was permissive, and that the Fuquays had presented evidence of at least three separate and distinct acts of adverse use that would rebut any presumption of permissive use.

**A. The district court applied the correct presumption of permissive use and the Fuquays failed to present evidence of any hostile or adverse act that would rebut that presumption.**

To prove the existence of an easement by prescription, a party must prove by clear and convincing evidence that use of the subject property was: "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period . . . ."[2] *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006). "Under claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement." *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997) "[A] prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, because the use, by definition, was not adverse to the rights of the owner." *Id.* "Easements by prescription are not favored by the law." *Hunter v. Shields*, 131 Idaho 148, 152, 953 P.2d 588, 592 (1998).

**1. The timeframe for application of the presumption is 1977 when the Fuquays purchased their property and began to use King Lane.**

The Fuquays argue that the district court incorrectly applied the presumption that their use of King Lane was permissive. The Fuquays contend that there is no evidence as to how the original use of King Lane began and, therefore, the district court should have applied the general rule presuming that the use was adverse based on the Fuquays' predecessors' use of King Lane. The Fuquays are incorrect.

"Generally, proof of open, notorious, continuous, and uninterrupted use of the way for the prescriptive period, without evidence as to how the use began, raises a presumption that the use was adverse and under claim of right." *Marshall*, 130 Idaho at 680, 946 P.2d at 980. "Proof of all of these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimant's use was permissive." *Id.*

---

[2] Under Idaho Code section 5-203, the statutory period is five years for prescriptive easement claims established prior to the amendment of the statute in 2006, or twenty years if established after the amendment. *Machado v. Ryan*, 153 Idaho 212, 222, 280 P.3d 715, 725 (2012).

The Fuquays contend that "[t]he roadway had been used by the predecessors to the current parties by use of the roadway for nearly 100 years; [and] [t]he origin of the roadway is unknown and therefore is presumed to be adverse to the Kings and Lows." However, the record does not support the Fuquays' claim. As we explained in *Marshall*, it is the "proof of all these elements" that shifts the burden. *Id.* The evidence that the Fuquays presented regarding use of King Lane by their predecessors falls well short of the requirement of continuous use. The Fuquays presented Samuel Steiner's statements that he did "not know who, if anyone, constructed King Lane," and that "[r]enters on the old Munger property, now owned by [the] Fuquays and previously owned by Bob Collett used it occasionally as a short-cut to Grand View." The Fuquays simply have not presented "proof of open, notorious, continuous, and uninterrupted use of the way for the prescriptive period," *Marshall*, 130 Idaho at 680, 946 P.2d at 980, on the part of their predecessors that would trigger a shift to a presumption of adverse use at any time prior to the Fuquays' purchase of the property and subsequent use of King Lane starting in 1977.

**2. The Fuquays' use of King Lane starting in 1977 was presumptively permissive based on the Kings' annual improvement of King Lane, starting in 1973, into an all-weather roadway.**

As explained above: "Without evidence of how the use of the property began, proof of open, notorious, continuous and uninterrupted use for the prescriptive period raises a presumption that the use was adverse and under a claim of right." *Hodgins v. Sales*, 139 Idaho 225, 232, 76 P.3d 969, 976 (2003) (internal citations omitted). However, we have articulated two exceptions to the presumption of adverse use: (1) "The use of a driveway in common with the owner and the general public, in the absence of some decisive act on the user's part indicating a separate and exclusive use on his part negatives any presumption of individual right therein in his favor." *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941); and, (2) "[W]here the owner of real property constructs a way over it for his own use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of license or permission." *Id.*

It its memorandum decision on the Kings' motion for reconsideration, the district court concluded that under the first exception to the general rule of adverse use, the Fuquays' use of King Lane was presumptively permissive based on their in-common use with the Kings and the general public. However, in its memorandum decision on the Fuquays' motion for

reconsideration, the district court changed positions, concluding that there was a question of fact as to whether there had been use of King Lane by the general public. The district court nevertheless denied the Fuquays' motion for reconsideration after concluding that the second exception to the presumption of adverse use applied because the Kings improved King Lane starting in 1973 for the benefit of their farming operation and the Fuquays had failed to produce any evidence that their own use of King Lane interfered with the Kings' rights.

It appears that the Fuquays have not fully appreciated the district court's changed analysis. The majority of the Fuquays' arguments on appeal focus on their claim that King Lane's existence and use by the parties' predecessors prior to 1973 establishes the presumption of adverse use, that the Kings did not present any evidence of a change from adverse to permissive use, that the public use exception does not apply, and that the Fuquays have presented evidence of distinct adverse use on King Lane. Indeed, the Fuquays' opening brief is virtually a word-for-word copy of the motion for reconsideration they submitted to the district court.

The Fuquays do not discuss the district court's conclusion concerning the creation or improvement of King Lane into an all-weather road under the second exception to the presumption of adverse use until their reply brief, wherein the Fuquays simply argue that the "*existence* of King Lane as an access road, and the improvements to the road *surface* that the Kings began in 1973" are two separate issues and because King Lane existed prior to the Kings purchase of the property in 1973, "[a] reasonable person could conclude that the roadway was in existence for nearly 100 years, and that prescriptive use rights had vested before the Kings purchased their property and began to improve the roadway surface in 1973." The Fuquays have not presented this Court with any argument or authority to contradict the district court's conclusion that their use of King Lane was presumptively permissive under the second exception to the general presumption of adverse use. Thus, the question then turns to whether the Fuquays have presented sufficient evidence of an adverse and hostile act.

"[I]f a use has commenced as permissive, a user must make some new and independent act that would put the owner of the servient property on notice that the use was no longer permissive." *Backman v. Lawrence*, 147 Idaho 390, 398, 210 P.3d 75, 83 (2009). "[T]he presumption continues until a hostile and adverse use is clearly manifested and 'brought home' to the servient property owner." *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 681, 339 P.3d 557, 566 (2014).

7

**3. The Fuquays have failed to present any evidence of hostile or adverse acts that infringed on the Kings' rights.**

The district court concluded that the Fuquays did nothing to interfere with the Kings' use of King Lane, and that interference is required to show adverse use. The Fuquays claim they have shown three distinct acts of adverse use. The Fuquays argue that the record shows distinctly adverse acts: (1) when the Fuquays purchased the property in 1977 and began using the roadway for access to their property; (2) when the Fuquays put a new mobile home on the property and used King Lane to access that new home; and, (3) when the Fuquays allowed numerous renters on their property to use the roadway for access to the rental property. The Fuquays do not present any citation to authority to support their arguments.

"Indeed, the rule is well established that no use can be considered adverse or ripen into a prescriptive right unless it constitutes an actual invasion of or infringement on the rights of the owner." *Hughes*, 142 Idaho at 480, 129 P.3d at 1229. The record shows that the Fuquays did not interfere with the rights of the Kings at any time. In fact, the Fuquays admitted during the preliminary injunction hearing that they never interfered with the Kings' use of King Lane. Thus, the Fuquays have failed to provide any evidence that their use of King Lane infringed on the rights of the Kings or Lows.

**B. The Kings and the Lows are entitled to attorney fees and costs on appeal.**

The Kings and the Lows request attorney fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 states, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."[3] I.C. § 12-121. "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law." *City of Boise v. Ada Cnty.*, 147 Idaho 794, 812, 215 P.3d 514, 532 (2009). "Ordinarily, attorney fees will not be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007).

---

[3] This version of Idaho Code section 12-121 took effect March 1, 2017, as House Bill 97 contained an emergency clause which provided that it became effective upon "its passage and approval." 2017 Idaho Sess. L. ch. 47, § 4, p. 76. The Governor signed the bill on March 1, 2017. We will apply the law in effect at the time of this decision.

Both the Kings and the Lows argue that they are entitled to attorney fees under Idaho Code section 12-121 because the Fuquays have done nothing more than assert the same arguments that failed before the district court, without adding significant analysis or authority. They are correct. "[A]ttorney fees on appeal have been awarded under Section 12-121 when appellants failed to add any new analysis or authority to the issues raised below that were resolved by a district court's well-reasoned authority." *Frantz v. Hawley Troxell Ennis & Hawley LLP*, 161 Idaho 60, 66, 383 P.3d 1230, 1236 (2016) (internal quotation omitted). This Court has awarded fees under Section 12-121 when an appellant presents "substantially the same arguments on appeal as it did before the district court on judicial review and failed to add significant new analysis or authority to support its arguments." *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 812, 367 P.3d 193, 207 (2016) (applying *Castrigno v. McQuade*, 141 Idaho 93, 98, 106 P.3d 419, 424 (2005)).

As noted above, the Fuquays' opening brief on appeal is almost a word-for-word copy of their motion for reconsideration before the district court. The Fuquays did not supplement their briefing with new analysis or authority to support their arguments and did not address the basis for the district court's decision on their motion for reconsideration until their reply brief. Thus, the Kings and the Lows are entitled to attorney fees and costs on appeal.

## IV. CONCLUSION

We affirm the district court's judgment in favor of the Kings and the Lows and award attorney fees and costs on appeal to the Kings and the Lows.

Justices EISMANN and JONES, **CONCUR**.

BRODY, Justice, concurring in part, dissenting in part.

I respectfully dissent from the award of attorney's fees to the Kings and Lows. There is no dispute that the Fuquays have been using King Road for about forty years. While the Fuquays were not successful in establishing that they have a prescriptive easement, they litigated an important, long-time interest, and I do not find that their efforts were frivolous, unreasonable or without foundation. This case was decided by the district court on summary judgment. The path to that judgment, however, was anything but straight and narrow. The Kings filed their motion for summary judgment in March 2015. The district court denied the motion, finding that there were genuine issues of material fact. The Kings then filed a motion for reconsideration which the

district court granted and judgment was entered in their favor. The Fuquays then filed a motion for reconsideration, and although the motion was denied, the district court recognized that there were, in fact, genuine issues of material fact as to whether the general public used King Road. Given these circumstances and the important interest at issue, asking this Court to review the district court's decisions, particularly where the standard of review is de novo, is not unreasonable, frivolous or without foundation.

Chief Justice BURDICK CONCURS.