# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50143

ROGER COOK and SHELLEY COOK, husband and wife,

    Plaintiffs-Respondents,

v.

JAY VAN ORDEN and SHELLI VAN ORDEN, husband and wife; DEXTER VAN ORDEN, an individual,

    Defendants-Appellants,

and

LAVAR GROVER and JEANETTE GROVER, husband and wife; MERRILL HANNY and BETHEA HANNY, husband and wife; DONALD G. ALLEN and KATHY ALLEN, husband and wife; BARRY COX and LINDA COX, husband and wife, and DOES I-V,

    Defendants.
_____

LAVAR GROVER and JEANETTE GROVER, husband and wife,

    Counterclaimants-Cross Claimants,

v.

ROGER COOK and SHELLEY COOK, husband and wife,

    Counterdefendants-Respondents,

and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, August 2023 Term

Opinion Filed: October 26, 2023

Melanie Gagnepain, Clerk

JAY VAN ORDEN and SHELLI VAN )
ORDEN, husband and wife; DEXTER VAN )
ORDEN, an individual, )
)
    **Cross Defendants-Appellants,** )
)
**and** )
)
**MERRILL HANNY and BETHEA HANNY,** )
**husband and wife; DONALD G. ALLEN and** )
**KATHY ALLEN, husband and wife; BARRY** )
**COX and LINDA COX, husband and wife,** )
)
    **Cross Defendants.** )
_____ )

        Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County, Darren B. Simpson, District Judge.

        The order of the district court is <u>reversed</u> and <u>remanded</u> for further proceedings.

        Cooper & Larsen, Pocatello, for Appellants. J. D. Oborn argued.

        Parsons Behle & Latimer, Idaho Falls, for Respondents. Jon Stenquist argued.

                    _____

BRODY, Justice.

        This is the second appeal of this matter, which concerns the existence of a prescriptive easement and the presumption of permissive use. Shelley and Roger Cook own a parcel of land (the "Cook Property") located in Bingham County, Idaho. The Cook Property was originally owned by Shelley's grandfather, John Harker Sr., and has stayed in the Harker family ever since. The Cooks filed suit against Jay and Shelli Van Orden alleging they had a prescriptive easement across the Van Ordens' land (the "Van Orden Property") via a road the parties call "Tower Road." Tower Road connects the Cooks' property to a county road and has been used by the Cooks and their predecessors in interest since the Cook Property was homesteaded in 1908. The district court initially entered judgment in favor of the Van Ordens after it determined the Cooks had failed to prove the necessary element of adverse use for a prescriptive easement. The Cooks appealed, and this Court reversed the district court's decision. This Court explained that it was necessary for the district court to determine the statutory period of adverse use because "there were potentially

2

periods of adverse use" that could satisfy "either the five-year or twenty-year period for establishing a prescriptive easement." *Cook v. Van Orden*, 170 Idaho 46, 53, 507 P.3d 119, 126 (2022) ("*Cook I*"). The case was remanded to the district court to determine the statutory period and analyze whether the Harkers' or Cooks' (collectively "Harkers/Cooks") use of Tower Road was adverse during that time.

On remand, the district court determined that the use of Tower Road by the Harkers was presumptively permissive prior to 1910 and that "nothing in the evidence [implies] that Harkers' or Cooks' permissive use of Tower Road . . . ever changed into an adverse use." Nevertheless, the district court identified a statutory period from 1962 to 2006, and granted the Cooks' prescriptive easement claim by concluding the period of statutory use was sufficiently adverse due to the common belief of the Harkers/Cooks and the Thompsons—the Van Ordens' predecessors in interest—that the Harkers/Cooks had a right to use Tower Road. In other words, the adverse use was established based on a claim of right regardless of the preceding permissive use. The Van Ordens appealed to this Court, contending that the district court erred in granting the Cooks a prescriptive easement. For the following reasons, we reverse the district court's decision and remand for entry of judgment in favor of the Van Ordens.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Cook Property

The Cook Property is a 160-acre parcel of land located in Bingham County. Shelley Cook's grandfather, John Ray Harker ("John Harker Sr."), homesteaded the land in 1908. John Harker Sr.'s widow, Sarah M. Clark (formerly Sarah M. Harker), was granted title to the land under the Homestead Act in 1922. Over the following years, the Cook property was conveyed to various family members. Their son, John Harker Jr., obtained ownership of the land in 1967. John Harker Jr.'s daughter, Shelley Cook, and her husband, Roger Cook, were deeded the land in 2018. Currently, Shelley and Roger Cook are the titled owners of the Cook Property.

Before John Harker Jr. obtained ownership, the Cook Property was leased to Allen Thompson in 1962. For roughly twenty years, he and his son, Ted Thompson, dry-farmed the land until the late-1980s. At that point, Ted placed the property into the government's Conservation Reserve Program ("CRP") and continued to lease the land and reseed it in accordance with the CRP requirements until 2015.

3

**B.     The Van Orden Property**

In 1910, George Thompson purchased a large parcel of land in Bingham County that included what is now the Van Orden Property. Upon his passing in 1968, George's daughter, Gwen Wilts, inherited the portion of the land that now constitutes the Van Orden Property. The Van Orden Property comprises approximately 2,000 acres. Wilts appointed her brother, Allen Thompson, and later his son, Ted Thompson, to act as her agents over the Van Orden Property. Allen and Ted dry-farmed the property until 1993. Then, like the Cook Property, Ted placed the land into the CRP until 2014. Roughly one year later, the Longhursts purchased the Van Orden Property. In late 2016 or early 2017, the Longhursts sold the property to the Van Ordens.

**C.     Tower Road**

Tower Road takes its name from radio towers, which were built on land that was once part of the Van Orden Property. Tower Road connects the Cook Property to County Road 129 South 10th East in Bonneville County, Idaho. Tower Road runs through several properties, including the Van Orden Property. In the mid-1980s, Ted Thompson created a side road off Tower Road known as the "Cut Out Road."

Since at least the 1960s, there has been a gate on the Van Orden Property near the intersection of Tower Road and County Road 129 South 10th East. Prior to the mid-1980s, it was a simple wire gate with a chain and occasionally a lock (referred to as the "farmer's gate"). According to the testimony of Matthew Thompson (the son of Ted Thompson) the Harkers probably had keys to the lock or put their own lock on the farmer's gate.

In the 1980s, at the request of power companies with property in the area, the Thompsons replaced the farmer's gate with a metal gate, which the parties refer to as the "heavy gate." The heavy gate was originally locked with a combination lock, then a single lock and key system was used. The Thompsons provided the Harkers/Cooks with a key to the heavy gate. In the 1990s, the lock and key system was replaced by personal locks on the gate in a daisy-chain series. Vehicles could drive around the heavy gate. During the years that the Thompsons owned the Van Orden Property, the public drove motorcycles, cars, pickups, four-wheelers, all-terrain vehicles, horses, and station wagons on the property.

The following figure shows Tower Road and the properties at issue:

4



**Figure 1. Map of Tower Road and Adjacent Properties**

### D. Accessing the Cook Property

John Harker Sr. accessed the Cook Property primarily by taking Tower Road. Between 1962 and 1967, John Harker Jr. also used Tower Road to access the Cook Property. In addition, Harker Jr. used the Cut Out Road to haul grain and to take boy scouts camping on the Cook Property. While Allen and Ted Thompson were leasing the Cook Property from the early 1960s to 1993, they accessed the Cook Property via Tower Road. The Cooks would use Tower Road to access their property an average of ten times per year to check that the property complied with the CRP requirements. When the Cooks forgot their key to the heavy gate, they would drive around the heavy gate or take a road by the Idaho Falls Country Club that connected to Tower Road.

5

When the Longhursts owned the Van Orden Property between 2015 and 2016, the Cooks would access Tower Road through Country Club Road. In the fall of 2016, Mr. Cook called Mr. Longhurst to speak with him about the Cooks getting a lock placed on the gate so they could access Tower Road. Mr. Longhurst was unavailable to speak with him at that time. Mr. Cook called Mr. Longhurst again several months later to make the request but, by then, the Longhursts had sold the land to the Van Ordens.

When the Van Ordens purchased the property, it was only partially enclosed. In the summer of 2017, the Van Ordens completely enclosed the property with a fence and gated the access points to Tower Road. The fence and gates contain the Van Ordens' cattle. Strangers, including Mr. Cook, would leave gates open, letting cattle out, or close gates that were intentionally left open by the Van Ordens to herd cattle through. To avoid this and to keep trespassers out, the Van Ordens placed locks on their gates. During this time, Mr. Van Orden told Mr. Cook that they would allow the Cooks to use Tower Road if the Cooks called and asked for permission first. Mr. Cook, however, expressed that he did not want to have to ask for permission.

### E.      Procedure

On July 17, 2017, the Cooks filed suit against the Van Ordens, asserting a prescriptive easement over Tower Road. During a bench trial in October 2020, multiple witnesses, including members of the Cook and Thompson families, testified that the Harkers/Cooks had a right to use Tower Road. The district court held that the Cooks' use of Tower Road was open and notorious, "continuous and uninterrupted from the early 1960s (if not before) until 2017," and with the actual or imputed knowledge of the Thompson family who possessed the land on behalf of the owner of the servient tenement. However, the district court also found that the Harkers'/Cooks' use of Tower Road was not adverse. Based on this conclusion, the district court determined that it did not need to calculate the applicable statutory period for the prescriptive easement claim because it became irrelevant. Following the bench trial, the title to Tower Road was quieted in favor of the Van Ordens.

The Cooks appealed to this Court, arguing that the district court had erred in determining their use had not been adverse and by not assigning a statutory period. In *Cook I*, we held that the district court erred by not assigning a statutory period to its analysis because there was "evidence suggesting that there may have been periods when the use was adverse." 170 Idaho 46, 53, 507 P.3d 119, 126 (2022). Without first knowing the relevant statutory period, the Court was unable to

determine whether the Harkers'/Cooks' use was adverse. *Id*. Thus, we reversed the district court's decision and remanded the case for the district court to identify the relevant statutory period and then determine whether the use had been adverse during that period.

On remand, the district court determined the Cooks established the necessary elements of a prescriptive easement for the five-year statutory period, continually, from 1962 to 2006. The district court determined that the Harkers'/Cooks' use of Tower Road was by permission from 1908 to 1962 but was "under a claim of right" from 1962 to 2015. The district court explained that, other than the "adverse and under a claim of right" element, all other elements for a prescriptive easement for Tower Road had been met between 1908 and 2015. Notably, the district court found that "nothing in the evidence [implies] that the Harkers' or Cooks' permissive use of the Tower Road, established prior to 1910, ever changed into an adverse use." The district court determined that, under prescriptive easement case law decided prior to this Court's decision in *Cook I*, it "would find that the Cooks failed to show adverse use and would deny the prescriptive easement." Nevertheless, the district court interpreted *Cook I* to suggest that the presumption of permissive use from 1908 to 1962 must be disregarded, and that the "Cooks' and Thompsons' common belief in the Harkers' right to use the Tower Road and the Cut Out Road equates to an adverse use under a claim of right." From this, the district court concluded that it was obligated to find that the Harkers'/Cooks' use had been adverse and granted the Cooks a prescriptive easement.

The Van Ordens timely appealed to this Court, arguing that the district court erred in granting the Cooks an easement by prescription after finding that the Cooks had not established adverse use of Tower Road.

## II.    STANDARDS OF REVIEW

"This Court's 'review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law.'" *Chester v. Wild Idaho Adventures RV Park, LLC*, 171 Idaho 212, 519 P.3d 1152, 1161 (2022) (quoting *Burns Concrete, Inc. v. Teton Cnty.*, 168 Idaho 442, 456, 483 P.3d 985, 999 (2020)). "A district court's determination that a claimant has or has not established a private prescriptive easement involves entwined questions of law and fact." *Cook I*, 170 Idaho at 51–52, 507 P.3d at 124–25 (quoting *Hughes v. Fisher*, 142 Idaho 474, 479, 129 P.3d 1223, 1228 (2006)).

7

"[W]hen reviewing the trial court's findings of fact in a case in which the facts must be established by clear and convincing evidence, the job of the reviewing court is simply to determine whether there is substantial and competent evidence to sustain the finding." *Latvala v. Green Enters.*, *Inc.*, 168 Idaho 686, 695, 485 P.3d 1129, 1138 (2021) (quoting *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000)). Evidence is substantial and competent if a reasonable trier of fact could accept and rely upon it in making the factual finding challenged on appeal. *Id*. "However, "[t]he substantial evidence standard for appellate review requires a greater quantum of evidence when the trial court's finding must be supported by clear and convincing evidence, than when mere preponderance is required." *Id*. "[T]his Court exercises free review over a trial court's conclusions of law, including the question 'of whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement.'" *Id*. (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)).

### III.    ANALYSIS

"An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 420, 283 P.3d 728, 737 (2012) (quoting *Hughes*, 142 Idaho at 480, 129 P.3d at 1229). To establish a prescriptive easement, the party claiming the easement must provide clear and convincing evidence that their use of the subject property was (1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement, (5) for the statutory period. *Cook*, 170 Idaho at 52, 507 P.3d at 125. "Idaho law disfavors private prescriptive easements." *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 679, 339 P.3d 557, 564 (2014). Because prescription acts as a penalty against the burdened landowner, "courts should closely scrutinize and limit rights obtained through prescription. . . ." *Id*.

The district court determined that the Harkers'/Cooks' use of Tower Road was presumptively permissive because the Van Orden Property was wild, unenclosed, and unimproved when the Harkers initially began using the property in 1908. Despite concluding this permissive use never changed into adverse use, the district court further determined that it was obligated to find that the Cooks established the "adverse and under a claim of right" element under its interpretation of *Cook I*. Each conclusion is addressed in turn.

8

**A. The district court did not err when it determined that the Harkers' use of Tower Road was presumptively permissive because the Van Orden Property was wild, unenclosed, and unimproved.**

"The question whether a use was adverse, made pursuant to an implied servitude, or permissive, in the inception is often difficult to answer, particularly in cases of long-established uses where the original parties are not available to describe the circumstances of the initial use." Restatement (Third) of Prop.: Servitudes § 2.16 cmt. g (2000). To help determine whether a use was permissive or prescriptive, "[c]ourts have developed a series of presumptions . . . ." *Id*. In Idaho, "[t]he general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of right." *Lemhi Cnty. v. Moulton*, 163 Idaho 404, 409, 414 P.3d 226, 231 (2018) (quoting *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973)). "Proof of all of these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimant's use was permissive." *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997).

However, "[t]he presumption of adverse use is inapplicable and rather permissive use is presumed" if the servient estate is wild, unenclosed, and unimproved. *Cook I*, 170 Idaho at 54–55, 507 P.3d at 127–28. "[I]f the presumption of permissiveness applied when the use began, the presumption continues until a hostile and adverse use is clearly manifested and 'brought home' to the servient property owner." *Id*. (quoting *H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566). As this Court has stated,

> [t]he reason for the rule that a passageway over unenclosed and unimproved land is deemed to be permissive is sound and also easily understandable . . . . It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also[,] in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand[,] there would be no reason or basis for such inference of permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation.

*H.F.L.P., LLC*, 157 Idaho at 681–82, 339 P.3d at 566–67 (2014) (quoting *Cox v. Cox*, 84 Idaho 513, 522, 373 P.2d 929, 934 (1962)).

"This Court has cautioned against becoming overly focused on discussions of shifting presumptions in prescriptive easement cases." *Cook I*, 170 Idaho at 53, 507 P.3d at 126 (citing *Hughes*, 142 Idaho at 481, 129 P.3d at 1230). Instead, we encourage courts to focus "on whether the five prescriptive easement elements have been satisfied based on the facts before them." *Hughes*, 142 Idaho at 481, 129 P.3d at 1230. However, since *Hughes*, this Court has explained: "it is not error for the court to use such rules as 'an approach to determining whether the claimant had met the elements for a prescriptive easement by clear and convincing evidence.'" *Backman*, 147 Idaho at 399, 210 P.3d at 84 (quoting *Beckstead v. Price*, 146 Idaho 57, 64, 190 P.3d 876, 883 (2008)). Presumptions may be permitted if each of the five elements for a prescriptive easement are adequately analyzed. *Id*. In this case, the district court was permitted to apply presumptions because it adequately analyzed each of the five elements for a prescriptive easement claim, "as this Court expressed a desire for in *Hughes* and *Beckstead*." *Id*. Moreover, this case provides an instance where the application of presumptions is appropriate to determine whether use during the statutory period was adverse or permissive because Harker Sr. is not available to describe the initial use of Tower Road.

A grant of permission can be express or can be implied by law when the servient estate was wild, unenclosed, *and* unimproved when the use began. *See Cook I*, 170 Idaho at 54–55, 507 P.3d at 127–28; *see also Hughes*, 142 Idaho at 480–81, 129 P.3d at 1229–30. In *Cook I*, this Court stated that "[a]dverse use may be established if the users can demonstrate *that their use was not based on a grant of permission*, but rather consisted of assertive conduct founded in common belief that they had a right to use the road without seeking permission." 170 Idaho at 56-57, 507 P.3d at 129-30 (emphasis added). As such, it is crucial to understand whether the Harker/Cook families' use of Tower Road was based on permission, either express or implied.

The Harkers began using Tower Road when John Harker Sr. homesteaded the Cook Property in 1908. The individuals who were present when the use began and would have personal knowledge regarding whether the Thompsons granted John Harker Sr. permission to use the road have all passed away. Evidence regarding whether John Harker Sr. had express permission to use Tower Road was limited to Shelley Cook's testimony that there was no indication in her family history that permission had been sought. As that testimony does not conclusively settle whether explicit permission had been granted, the question becomes whether the Harkers' use of Tower

10

Road was implicitly and presumptively permissive—an issue that must be analyzed under the applicable presumption for use across wild, unenclosed, and unimproved land.

The testimony presented at trial provides substantial and competent evidence to support the district court's conclusion that the Van Orden Property was wild, unenclosed, and unimproved when the Harkers' use of Tower Road began. The unfarmed portion of the land consists of sagebrush, quaking aspen, and juniper trees, or rocks, and Mrs. Cook testified that fields were planted on the property in the 1960s. The Thompsons never built corrals, buildings, or other improvements on the property. Therefore, the district court reasonably inferred that the land was both wild and unimproved before the fields were planted in the 1960s. In addition, the Van Orden Property was unenclosed when the Van Ordens purchased it in 2016 or 2017. Because substantial and competent evidence supports the conclusion that the Van Orden Property was wild, unenclosed, and unimproved prior to the 1960s, the district court's conclusion that the Harkers' initial use of Tower Road was presumptively permissive is affirmed.

**B.  The district court erred when it determined that the Harkers'/Cooks' use of Tower Road became adverse in 1962 to establish a prescriptive easement.**

As noted above, the district court determined that the presumption of permissive use applied to the Harkers' initial use of Tower Road. "[I]f the presumption of permissive use applied when the use began, the presumption continues until a hostile and adverse use is clearly manifested and 'brought home' to the servient property owner." *H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566. "[T]he nature of the use is adverse if 'it runs contrary to the servient owner's claims to the property.'" *Backman*, 147 Idaho at 397, 210 P.3d at 82 (quoting *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 303, 127 P.3d 196, 206 (2005)). For a hostile and adverse use to be clearly manifest, "a user must make some new and independent act that would put the owner of the servient property on notice that the use was no longer permissive." *Id.* at 398, 210 P.3d at 83.

*1.  The district court was not obligated to find adverse use under* Cook I.

The district court stated that "nothing in the evidence [implies] that the Harkers' or Cooks' permissive use of Tower Road . . . ever changed into an adverse use. Based upon these facts, it is difficult to conclude that the Harker family demonstrated an 'adverse use of the Tower Road.'" The district court noted that, ordinarily, it would find that the Cooks failed to establish a prescriptive easement under *Fuquay v. Low*, 162 Idaho 373, 397 P.3d 1132 (2017), *H.F.L.P., LLC,* 157 Idaho 672, 339 P.3d 557, and *Backman*, 147 Idaho 390, 210 P.3d 75. However, the district

11

court determined that the Cooks established adverse use due to its interpretation of our holding in *Cook I*. A portion of the district court's decision centered on the following statement in *Cook I*:

> It is not necessary to show a history of contentious or aggressive behavior to satisfy the "adverse use" element of a prescriptive easement—although, unfortunately, that is often the case. Adverse use may be established if the users can demonstrate that their use was not based on a grant of permission, but rather consisted of assertive conduct founded in common belief that they had a right to use the road without seeking permission. Here, Shelley Cook, Matthew Thompson, and Shirley Thompson all testified that the Harkers' and Cooks' adverse use of the road over the servient estate was predicated on the understanding that the Harkers had a right to use the road and did not need permission.

*Cook I*, 170 Idaho at 56–57, 507 P.3d at 129–30. The district court stated that this "holding appears to signal that a common belief of a claimant's right to use the contested property satisfies both the 'adverse' and 'as a matter of right' prongs of the third prescriptive easement element." Under this interpretation, the district court determined that it "was obligated to find that the Cooks [had] established adverse use" based on "the Cooks' and Thompsons' common belief in the Harkers' right to use the Tower Road and the Cut Out Road." This interpretation would also suggest that the Court's statement in *Cook I* provided a new or different legal standard for prescriptive easements than the Court's decisions in *Fuquay, H.F.L.P.*, *LLC*, and *Backman*. That is not the case.

In *Cook I*, we reaffirmed the well-established principle that adverse use cannot be established if the use is based on permission. 170 Idaho at 56-57, 507 P.3d at 129–30; *see Fuquay*, 162 Idaho at 377, 397 P.3d at 1136; *see also H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566; *Backman*, 147 Idaho at 397–-98, 210 P.3d at 82–83. We further noted that assertive conduct paired with a common belief that there was a right to use the road *could* constitute adverse use under a claim of right. 170 Idaho at 56–57, 507 P.3d at 129–30; *see H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566; *see Backman*, 147 Idaho at 398, 210 P.3d at 83. Thus, the quoted statement from *Cook I* above simply restates existing principles of adverse use for prescriptive easements. *See Cook I*, 170 Idaho at 56-57, 507 P.3d at 129–30. We did not eliminate the presumption of permissive use, nor did we eliminate the need for specific conduct to overcome the presumption of permission to establish use that is adverse. Our restatement of settled principles in *Cook I* was not intended to compel the district court to decide the prescriptive easement issue a specific way. Instead, we held that without knowing the statutory period, this Court could not determine whether the district court erred when it determined the Cooks' use of Tower Road was not adverse. *Id*. at 53–57, 507 P.3d

12

at 126–30. We also noted that testimony indicating the Harkers had a right to use the road "*could have established adverse use.*" *Id*. at 57, 507 P.3d at 130 (emphasis added). However, this merely indicated that there were "*potentially* periods of adverse use," which made it necessary to determine the time parameters the district court considered. *Id*. at 53, 507 P.3d at 126 (emphasis added). In short, the district court was not obligated to find that the Cooks had established "adverse use and under a claim of right" under our decision in *Cook I*.

### 2. *The Cooks did not establish that the Harkers'/Cooks' permissive use of Tower Road changed into an adverse use.*

On remand from *Cook I*, the district court found that "nothing in the evidence [implies] that the Harkers' or Cooks' permissive use of the Tower Road, established prior to 1910, ever changed into an adverse use." Nevertheless, the district court determined the Cooks established adverse use for a five-year statutory period, continually, from 1962 to 2006. Because the presumption of permissiveness applied when the use began, the Cooks needed to establish by clear and convincing evidence that "some new and independent act" occurred between 1962 to 2006 "that would put the owner of the servient property on notice that the use was no longer permissive." *Backman*, 147 Idaho at 398, 210 P.3d at 83. The Cooks failed to do so.

In the early 1900s, John Harker Sr. began using Tower Road to access the Cook Property. By the 1960s, the Harker family continued using the road in a similar manner, by driving on Tower Road to access the property. Testimony at trial establishes that the Harkers/Cooks and the Thompsons held a common belief that the Harker family had a right to use Tower Road and that the Harkers/Cooks did not seek permission to use Tower Road. However, once permissive use was established, the mere subjective belief that one has a right to use the road in question is not sufficient to establish adverse use. *See Backman*, 147 Idaho at 397–98, 210 P.3d at 82–83; *see also H.F.L.P., LLC*, 157 Idaho at 682, 339 P.3d at 567. Nor would permissive use change to adverse use merely because permission was not continually sought. *See Wood v. Hoglund*, 131 Idaho 700, 704, 963 P.2d 383, 387 (1998) ("[P]ermissive use cannot ripen into a prescriptive easement.").

Rather, the Cooks needed to put forth evidence to show that a hostile and adverse use was "clearly manifested and 'brought home' to the servient property owner." *H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566 (citation omitted); *see also Fuquay*, 162 Idaho at 379, 397 P.3d at 1138 (citation omitted). "[T]he rule is well established that no use can be considered adverse or ripen into a prescriptive right unless it constitutes an actual invasion of or infringement on the rights of

the owner." *Fuquay*, 162 Idaho at 379, 397 P.3d at 1138. In this case, the record supports the district court's conclusion that the Harkers'/Cooks' permissive use of Tower Road never changed into an adverse use.

At trial, the Cooks argued that they asserted their right to Tower Road in the 1980s by occasionally driving around the heavy gate to access Tower Road. However, as the district court noted, the public also drove around the heavy gate. When a claimed easement is used "indiscriminately by the general public," a prescriptive easement generally cannot be established. *Hughes*, 142 Idaho at 481, 129 P.3d at 1230 (quoting *Hall v. Strawn*, 108 Idaho 111, 112–13, 697 P.2d 451, 452–53 (Ct. App. 1985), *overruled on other grounds by Cardenas v. Kurpjuweit*, 116 Idaho 739, 779 P.2d 414 (1989)). Therefore, the district court did not err when it concluded that the Cooks' occasional circumvention of the heavy gate was not a sufficiently adverse act to overcome the established permissive use. Furthermore, the Cooks only needed to drive around the heavy gate if they forgot their key, which was given to the Harkers by Ted Thompson. As the district court correctly noted: "a lock and key system, whereby the dominant estate owner is given a key, is [a factor] which supports a finding of permissive, rather than adverse, use." *See*, *e.g.*, *H.F.L.P., LLC*, 157 Idaho at 682, 339 P.3d at 567; *Christle v. Scott*, 110 Idaho 829, 718 P.2d 1267 (Ct. App. 1986). Thus, the district court's finding that the Cooks' use remained permissive is supported by additional facts in the record.

For these reasons, the district court's conclusion that the Harkers' and Cooks' use of Tower Road remained permissive is supported by substantial and competent evidence. As such, the Cooks failed to prove all the elements for a prescriptive easement by clear and convincing evidence, and the district court erred in granting the Cooks a prescriptive easement.

## C.     Attorney Fees and Costs

The Cooks assert that they are entitled to attorney fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 provides that a "judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Inasmuch as the Cooks have not prevailed on appeal, they are not entitled to attorney fees.

## IV.     CONCLUSION

For the reasons set forth above, we reverse the district court's decision granting the Cooks a prescriptive easement and remand with instructions that the district court enter judgment in favor

14

of the Van Ordens. The Cooks are not entitled to attorney fees on appeal. Costs are awarded to the Van Ordens as a matter of course pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN CONCUR.