# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52190

SPIRIT LAKE CABINS, LLC,

    Plaintiff-Appellant,

and

GERALD NEESER, trustee of the Gerald E. Neeser Revocable Living Trust,

    Plaintiff,

v.

INLAND EMPIRE PAPER COMPANY, a Washington corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2026 Term

Opinion filed: May 7, 2026

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Barry McHugh, District Judge.

The judgment of the district court is <u>affirmed</u>.

Randall | Danskin, Spokane, Washington, for Appellant Spirit Lake Cabins, LLC. Michael L. Wolfe argued.

James, Vernon & Weeks, P.A., Coeur d'Alene, for Respondent Inland Empire Paper Company. Susan P. Weeks argued.

_____

MOELLER, Justice.

This appeal concerns an attempt to establish a prescriptive easement over a dirt and gravel road crossing privately owned forest land in northern Idaho. Spirit Lake Cabins, LLC ("Spirit") claims it established a prescriptive right to access three lots via a road owned by Inland Empire Paper Company ("IEP"). Following a trial, the district court entered a judgment denying the prescriptive easement. The court's decision was based largely on its conclusion that the prior use of the road by Spirit's predecessors was presumptively permissive due to the wild, unimproved, and unenclosed nature of the lands traversed by the road. Spirit has appealed that judgment,

1

arguing that the district court erred as a matter of law in reaching its legal conclusions concerning the elements of a prescriptive easement. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Gerald Neeser, the predecessor of Spirit, purchased three lots in a subdivision along the south shore of Spirit Lake in Kootenai County. There is a road that provides access to the lots known as the "M-1 Road," which crosses a parcel of land owned by IEP. This parcel is known as the "Brickle Creek Unit," and it consists of approximately 20,000 acres of wooded land used for harvesting forest products.

Neeser and his family and friends, as well as tradesmen performing work on the lots, have used the M-1 Road at various times since 1999. Some of these uses included: transporting construction materials to build structures; accessing the lots for parties, recreation, and camping; and transporting furniture, appliances and supplies. Other cabin owners in the area have used the road to access their properties, some of whom had easements to do so. The record also suggests that there may have been other, less convenient ways to access lots in the area; however, the adequacy of the alternate routes is not at issue on appeal.

IEP had historically allowed the public to use the M-1 Road; however, starting in 2001, it began an "educational campaign" to inform the public that a permit from IEP would be required to access the road in the future. IEP did not initially require a permit for the public to access the road during this time. In 2016, IEP installed a gate on the M-1 Road and provided keys to members of the public if they purchased a revocable "Road Use Permit." Neeser refused to purchase a permit. Consequently, the first time Neeser was told he was not allowed to use the road without a permit was in 2016.

In 2018, Neeser, as the trustee of the Gerald E. Neeser Revocable Living Trust, which owned the three lots, filed a complaint against IEP. He claimed that the Trust had a prescriptive easement "over and across IEP Property's private roads," which includes the M-1 Road. The district court granted Neeser's motion for summary judgment after concluding he had established a prescriptive easement over IEP's land benefitting lots 3 and 4. *Neeser v. Inland Empire Paper Co.*, 170 Idaho 692, 695–96, 516 P.3d 562, 565–66 (2022). IEP appealed that decision to this Court, which reversed the district court's decision and remanded the dispute for further proceedings. *Id.* at 696, 700, 516 P.3d 566, 570. The Trust deeded all its interest in Lot 2 and a portion of its interest in Lots 3 and 4 to Spirit, and the district court then granted Neeser's motion

to join Spirit as a real party in interest pursuant to Idaho Rule of Civil Procedure 17(a)(3). Neeser is currently the "sole governor" of Spirit.

Following remand, the district court held a three-day bench trial, after which it concluded that Spirit failed to establish that it had a prescriptive easement over the M-1 Road on IEP's property. The court found that Spirit's use of the M-1 Road was open, notorious, continuous, and uninterrupted from 1999 to 2016. However, the court ruled that Spirit's use did not become adverse until 2016, when IEP installed the gate controlling access to the road and Neeser refused to sign a "Road Use Agreement." This conclusion was based on the court's determination that IEP's property, which the M-1 Road traverses, is wild, unimproved, and unenclosed, resulting in a presumption of permissive use. The court further concluded that Neeser's use of the road did not become adverse under a claim of right until after Neeser continued using the road following IEP's insistence that he sign the Road Use Agreement in 2016.

## II.     STANDARDS OF REVIEW

"This Court's 'review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law.' " *Chester v. Wild Idaho Adventures RV Park, LLC*, 171 Idaho 212, 221, 519 P.3d 1152, 1161 (2022) (quoting *Burns Concrete, Inc. v. Teton County*, 168 Idaho 442, 456, 483 P.3d 985, 999 (2020)). "A district court's determination that a claimant has or has not established a private prescriptive easement involves entwined questions of law and fact." *Cook v. Van Orden (Cook I)*, 170 Idaho 46, 51–52, 507 P.3d 119, 124–25 (2022) (quoting *Hughes v. Fisher*, 142 Idaho 474, 479, 129 P.3d 1223, 1228 (2006)).

"[W]hen reviewing the trial court's findings of fact in a case in which the facts must be established by clear and convincing evidence, the job of the reviewing court is simply to determine whether there is substantial and competent evidence to sustain the finding." *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 695, 485 P.3d 1129, 1138 (2021) (alteration in original) (quoting *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000)). Evidence is substantial and competent if a reasonable trier of fact could accept and rely upon it in making the factual finding challenged on appeal. *Id.* "However, "[t]he substantial evidence standard for appellate review requires a greater quantum of evidence when the trial court's finding must be supported by clear and convincing evidence, than when mere preponderance is required." *Id.* "[T]his Court exercises free review over a trial court's conclusions of law, including the question 'of whether the facts

found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement.' " *Id.* (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)).

### III.   ANALYSIS

This appeal asks us to review the trial record and determine whether substantial and competent evidence supported the district court's conclusion that Spirit failed to prove by clear and convincing evidence that it had established a prescriptive right to use the M-1 Road. "Establishing an easement by prescription requires a party to 'prove by clear and convincing evidence use of the subject property that is (1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement, (5) for the statutory period . . . .' " *Cook v. Van Order* (*Cook I*), 170 Idaho 46, 52, 507 P.3d 119, 125 (2022) (alteration in original) (quoting *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006)).

The district court concluded that while Spirit satisfied the first, second, and fifth elements of its prescriptive easement claim, it failed to establish the third and fourth elements. It determined that Spirit's use of the M-1 Road was open and notorious because its use amounted to more than recreational activity and exceeded that of the general public. The district court also concluded that Sprit's use was continuous from the date Neeser acquired the lots and applied the five-year statutory period for prescriptive easement claims before the 2006 amendment to Idaho Code section 5-203.[1] However, Spirit contests the district court's conclusions regarding the third and fourth elements of its prescriptive easement claim, including the district court's determination that knowledge of Spirit's use could not be imputed to IEP and that its use of the road was presumptively permissive. Each argument will be addressed in turn. Although Spirit is the real party in interest in this case, this opinion also uses "Neeser" when the discussion focuses on the specific conduct of Neeser and his agents in relation to the M-1 Road.

---

[1] Before 2006, the statutory period for bringing a prescriptive easement claim was five years. Idaho Code section 5-203 was amended in 2006 to increase the statutory period from five years to twenty years. *See* Act of Mar. 22, 2006, ch. 158 § 1, 2006 Idaho Sess. Laws 474.

**A. The district court did not err in determining IEP's property was wild, unimproved, and unenclosed; thus, IEP was entitled to the presumption that Spirit's use was permissive.**

Permissive use can defeat a claim of adverse possession. *Cook I*, 170 Idaho at 54, 507 P.3d at 127. The district court concluded that IEP's property was wild, unimproved, and unenclosed, which gives rise to a presumption of permissive use by Spirit. *See id.* The district court made several key findings in support of its conclusion:

- the property was unenclosed until IEP erected a gate on the M-1 Road in 2016;

- the property is almost 20,000 acres of timberland "used to grow and harvest forest products";

- the only development on the land is roads for logging;

- the only other uses of the land in the record are by the general public for recreation, hunting, and gathering firewood;

- the M-1 Road "consists mostly of native soil with gravel in certain locations";

- IEP only maintained the road before and after logging operations (approximately every two to four years); and

- the M-1 Road is one and one-half lanes wide with small turnouts.

Spirit maintains that the district court erroneously concluded IEP's property was wild, unimproved, and unenclosed. First, it cites *Wood v. Hoglund*, 131 Idaho 700, 704, 963 P.2d 383, 387 (1998), for the proposition that property need not "be substantially improved or, indeed, improved to any other measurable degree" to be considered legally "improved." In *Wood*, this Court emphasized the district court's conclusion that a property was "improved" because the owner of the property erected a one room cabin, a pumphouse, a shed, and possible sleeping quarters. *Id.*

A property's status as wild, unimproved, and unenclosed is a fact-intensive inquiry, in which the district court makes findings of fact based on the evidence presented at trial. *See, e.g.*, *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 682–683, 339 P.3d 557, 567–68 (2014). Our observation in *Wood*—that the construction of structural improvements on property generally changes its status from unimproved to improved—remains good law, but it is inapplicable here. This statement in *Wood* should not be extended so broadly that the relatively minor maintenance IEP performed on the M-1 road—constructed solely for timber removal—qualifies as the type of improvement that would render IEP's 20,000 forested acres no longer unimproved. Indeed, we

5

have recognized that the mere presence of a road or passageway over such land does not, by itself, constitute an improvement that alters its status. *See H.F.L.P., LLC*, 157 Idaho at 681–82, 339 P.3d at 566–67. We conclude that Spirit's comparison of the dirt and gravel M-1 Road to the structural improvements in *Wood*—a cabin, pumphouse, shed, and sleeping quarters—is unavailing.

Spirit next argues that this Court has held "grading, filling and leveling for paths and roads improve land, and that roadways are structures built on land." However, the case Spirit relies on concerned a dispute over mechanic liens filed by an engineering firm "for paving work it did on roadways and golf cart paths." *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 157 Idaho 600, 602, 338 P.3d 1204, 1206 (2014). Its holding is inapposite because it addressed the meaning of "improvements" under Idaho Code section 45-508—a lien statute. *Id.* at 612–14, 338 P.3d at 1216–18. Thus, while the case treated grading and roadway construction as improvements for purposes of determining the scope of a lien statute, it is neither relevant nor helpful here because the statutory definition is completely unrelated to easements.

Finally, Spirit argues that the district court's reliance on *H.F.L.P., LLC* to determine whether IEP's servient estate was "wild, unimproved, and unenclosed" was "misplaced" and erroneous. It claims that the description of the road in that case as "essentially two tire tracks," *H.F.L.P., LLC*, 157 Idaho at 683, 339 P3d at 568, was only relevant in "the context of the character" of the land at issue and that the quality of the road was not determinative to the status of the property as wild, unimproved, and unenclosed. Spirit also takes issue with the district court's summary of the case because the road in *H.F.L.P., LLC* was described as "essentially two tire tracks," *id.*, while the district court stated it was "two tire tracks wide."

While it is true that describing the physical nature of a road as "essentially two tire tracks" communicates meaning about the state of the road, it also reasonably explains the width of the road, as the district court stated in its decision. Further, the district court's discussion of *H.F.L.P., LLC* was offered in conjunction with our rationale in *Cook II*, which explained the reasoning behind a presumption of permissive use for wild and unimproved land by quoting *H.F.L.P., LLC*:

> [T]he reason for the rule that a *passageway over unenclosed and unimproved land* is deemed to be permissive is sound and also easily understandable . . . . It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also[,] in such instances the landowner would probably have no reason to think the users of the passageway

6

were attempting to acquire any adverse rights. On the other hand[,] there would be no reason or basis for such inference of permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation.

*Cook v. Van Orden (Cook II)*, 172 Idaho 869, 876–77, 537 P.3d 1230, 1237–38 (2023) (alterations in original) (emphasis added) (quoting *H.F.L.P., LLC*, 157 Idaho at 681–82, 537 P.3d at 677–67). *H.F.L.P., LLC* explicitly contemplates that property can remain unimproved even where a "passageway" runs across it. Therefore, Spirit's argument is unpersuasive. Although Spirit claims that the quality of a road is immaterial to whether a property is improved, it simultaneously emphasizes that the M-1 Road is "partially graveled, crowned, and has culverts," to show IEP's property has been improved. This internal inconsistency undermines its position.

In *Cook II*, the district court's finding that the servient estate, which was traversed by a road, was wild, unenclosed, and unimproved when the claimant's use of the property began was supported by substantial and competent evidence. *Cook II*, 172 Idaho at 877–78, 537 P.3d at 1238–39. That evidence included testimony that unfarmed portions of the land contained sagebrush, quaking aspen, juniper trees, and rocks; and that the owners never built corrals, buildings, or other improvements. *Id.* at 878, 537 P.3d at 1239. It also included testimony that the relevant parcel was unenclosed when purchased by the owners of the land. *Id.* Thus, in *Cook II*, substantial and competent evidence supported the district court's conclusion that the land was wild, unimproved, and unenclosed when the claimant's use of the road began. *Id.*

Here, substantial and competent evidence supported the district court's conclusion that Spirit's use of the land began when it was wild, unimproved, and unenclosed. The Brickle Creek Unit at issue consists of approximately 20,000 acres of woods (over 31 square miles). There is no evidence in the record showing any improvements on the land before or after Neeser's use began, aside from periodic maintenance of the M-1 Road for logging purposes.

The record shows that IEP historically allowed the general public to use the road and its land. Prior to 1999, IEP had an "open-door policy" under which it would "share the use of the timberlands with the public" for recreation. The public's use was "unpatrolled." Even after 1999, when IEP hired a company to patrol the road, IEP only requested that the company inform people it encountered not to use the road if it was in a wet or dangerous condition. The patrolling company's instructions were to be "courteous, be professional, [and] educate." This testimony,

combined with the findings regarding the nature of the massive 20,000-acre property, supports the district court's conclusion that IEP's land was wild, unimproved, and unenclosed.

We agree with the district court's conclusion that "[a] property owner's need for a higher quality road should not convert a 20,000-acre wild property from unimproved to improved." We affirmed this precise concept—that the mere existence of a road on rural property does not necessarily qualify as an improvement precluding the property from being wild or unimproved—in *Cook II. See* 172 Idaho at 878, 537 P.3d at 1239. Accordingly, we affirm the district court's conclusion that IEP's land was wild, unimproved, and unenclosed.

## B. The district court did not err in concluding Spirit failed to rebut the presumption of permissive use.

Inasmuch as this Court has affirmed the district court's conclusion that land through which the M-1 Road traverses is wild, unimproved, and unenclosed, Spirit's use of the M-1 Road is presumed to be permissive. *See Cook I*, 170 Idaho at 54, 507 P.3d at 127. Nevertheless, Spirit argues that it rebutted this presumption of permissive use based on Neeser's and his agents' past use of the M-1 Road for delivery of construction materials, equipment, furniture, and appliances, all of which it maintains constituted "decisive acts." It cites a case where this Court held that a presumption of permissive use based on the "general public use" exception was successfully rebutted. *Marshall v. Blair*, 130 Idaho 675, 680–81, 946 P.2d 975, 980–81 (1997).

In *Marshall*, we affirmed the district court's conclusion that the plaintiff rebutted the presumption of permissive use based on several actions: using the road to transport construction materials to build a home, erecting an "entrance gateway" from the property to the road, and continuing to use the road despite placement of no trespassing signs. *Id.* at 681, 946 P.2d at 981. Spirit analogizes Neeser's construction of a home on his property, with a driveway connecting to the M-1 Road, to the plaintiff's conduct in *Marshall*.

The comparison to *Marshall* is unpersuasive because that case was materially distinguishable from the current dispute. There, the claimant continued to use the road despite no trespassing signs placed by the servient estate owner and construction of the only residence in an area that had previously been exclusively agricultural. *Id.* Here, there are multiple homes along the shore of Spirit Lake and Neeser acknowledges that he frequently passed other homeowners on the road. IEP did not construct a gate on the M-1 Road until 2016, and did not send Neeser, or request that he sign, a proposed Road Use Agreement until 2016. Thus, the district court's conclusion that

8

Neeser's use of the road did not become adverse until 2016 does not conflict with the holding in *Marshall*.

The district court did find that Neeser's episodic use of the road to erect buildings and other structures "exceed the scope of the use by the general public for hunting and gathering firewood." However, this Court has explained: "if a use has commenced as permissive, a user must make some new and independent act that would put the owner of the servient property on notice that the use was no longer permissive." *Fuquay v. Low*, 162 Idaho 373, 379, 397 P.3d 1132, 1138 (2017) (quoting *Backman v. Lawrence*, 147 Idaho 390, 398, 210 P.3d 75, 83 (2009)). The district court found "there is no evidence that Mr. Neeser's use of the M-1 Road, constructed by [IEP] for its own use and convenience, interfered in any way with [IEP's] use of or claim to the M-1 Road during the claimed prescriptive period." *Fuquay* supports the district court's conclusion. There, the claimant argued that (1) using a roadway to access a property, (2) putting a mobile home on that property via the road, and (3) allowing renters to enter that property via the road, all constituted adverse acts that would rebut the presumption of permissive use. *Fuquay*, 162 Idaho at 379, 397 P.3d at 1138. This Court rejected that reasoning because none of those acts interfered with the rights of the servient estate. *Id.*

Here, the district court similarly found that Spirit's actions (delivery of construction materials and general access) did not interfere with IEP's use of the road. Given that other homeowners, builders, and recreators frequently used the M-1 Road by Neeser's own admission, it does not appear that his use constituted a decisive act warranting a rebuttal of permissive use, nor does his use appear to be an adverse act against the interests of IEP. As we stated in *Cook II*, evidence is needed showing "that a hostile and adverse use was clearly manifested and *brought home to the servient property owner*." 172 Idaho at 879, 537 P.3d at 1240 (emphasis added) (internal quotation makes omitted) (quoting *H.F.L.P., LLC*, 157 Idaho at 861, 339 P.3d at 566). Neeser admitted that nobody ever prohibited him from driving on IEP's roads in the Brickle Creek Unit, and no evidence supports that his use "brought home" the activity to IEP. *See id.* Thus, substantial and competent evidence supports the district court's conclusion that Spirit's use of the road, through Neeser and his agents, began under a presumption of permissive use and that no new, independent acts occurred to put IEP on notice that Spirit's use had changed.

**C. The district court did not err in concluding Spirit was not entitled to a presumption of adverse use.**

Spirit further argues that it was entitled to a presumption of adverse use by claiming the district court incorrectly found that it was "known how the use of the M-1 Road began." It cites to testimony from the Forest Resource Manager for IEP, in which he stated that he did not know when the M-1 Road was built. Spirit also relies upon Neeser's testimony that a prior owner of Lot 4, Jerry Peterson, told Neeser that he had road access when he sold it to the Millers, from whom Neeser purchased Lot 4. Although Spirit insists that use of the M-1 Road to access the lots began before Neeser acquired the property, proof of when that use began is lacking. Accordingly, Spirit, citing *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973), maintains that its open, notorious, and continuous use for the prescriptive period requires a presumption of adverse use.

The district court found that Neeser's use of the M-1 Road began in 1999 when he purchased the lots. At trial, Spirit provided only limited evidence that did not provide clear and convincing evidence of open, notorious, and continuous use of the M-1 Road by the Millers or the Petersons, the owners of the lots prior to 1999. Spirit only offered the following: (1) Neeser's testimony concerning alleged hearsay statements by Jerry Peterson that he previously used the road for access when he sold it to the Millers and (2) warranty deeds demonstrating proof of ownership by Miller and Peterson.

In *Fuquay*, the claimants seeking a prescriptive easement made a similar argument about continuous use by their predecessors in interest. 162 Idaho at 377–78, 397 P.3d at 1136–37. This Court held that testimony offered at trial to the effect that prior owners had used the road fell "well short of the requirement of continuous use." *Id.* at 378, 397 P.3d at 1137. Given the limited and indefinite evidence of historic use by Spirit's and Nesser's predecessors, and our holding in *Fuquay*, we hold the district court's conclusion that the evidence elicited at trial failed to prove by clear and convincing evidence that the open, notorious, and continuous use of the M-1 Road began prior to Neeser's purchase of the lots in 1999, was supported by substantial and competent evidence.

Contrary to Spirit's argument, there is some evidence of how the use began because the district court made extensive findings of fact on evidence offered at trial regarding Neeser's permissive use of the road beginning in 1999. Based on the court's finding of permissive use beginning in 1999, a presumption of adverse use cannot apply. *Hodgins v. Sales*, 139 Idaho 225, 232, 76 P.3d 969, 976 (2003). Importantly, even if Spirit succeeded in this argument, our

10

conclusion that IEP's property was wild, unimproved, and unenclosed, dictates a presumption of permissive use. *Id.* (citing *Cox v. Cox*, 84 Idaho 513, 518, 373 P.2d 929, 934 (1962)). Therefore, we affirm the district court's conclusion that Spirit was not entitled to a presumption of adverse use.

### D. The district court did not err in concluding that Spirit's use of the M-1 Road did not become adverse until 2016.

Spirit next argues that the district court erred by concluding Neeser's use of the M-1 Road did not interfere with IEP's claim to the road until 2016. It further maintains that Neeser's use comports with the definition of "adverse use" in *Hodgins*, which describes adverse use as "an actual invasion or infringement made without permission of the owner." 139 Idaho at 231, 76 P.3d at 975 (first citing *Simmons v. Perkins*, 63 Idaho 136, 140, 118 P.2d 740, 744 (1941); and then citing *Melendez v. Hintz*, 111 Idaho 401, 724 P.2d 137 (Ct. App. 1986)). Finally, Spirit asserts that Neeser's use was "hostile" because it ran contrary to IEP's claims to the property.

This Court recently reaffirmed in *Cook II* that adverse use cannot be established if that use is based on permission. 172 Idaho at 879, 537 P.3d at 1240. We clarified that "assertive conduct paired with a common belief that there was a right to use the road *could* constitute adverse use under a claim of right." *Id.* Critically, "[w]e did not eliminate the presumption of permissive use, nor did we eliminate the need for specific conduct to overcome the presumption of permission to establish use that is adverse." *Id.* Thus, Spirit was required to present clear and convincing evidence of specific conduct that would overcome the presumption of permissive use, which was based on IEP's land being wild, unimproved, and unenclosed. As discussed above, the nature of Neeser's use—general recreation, property access, and transport to host parties—remained constant during the initial prescription period of 1999 to 2004, and during the subsequent years until 2016. There were also scattered episodes of vehicular access to transport laborers and building materials. Because Spirit can only point to these uses, it has failed to identify substantial and competent evidence of assertive conduct overcoming the permissive presumption.

Even without relying on the presumption of permissive use, substantial evidence supports the district court's finding that Spirit's use of the road was not adverse to IEP's interests. IEP never told Neeser he was not allowed to use the road until sometime in 2016 when the company first sent him a Road Use Agreement. IEP's use of the road was for logging operations and Neeser testified that the company placed signs to warn people of the presence of logging trucks during these operations. Importantly, the placement of warning signs that *did not prohibit* the public from

using the road demonstrates that (1) IEP was aware of the public's presence on its roads during logging operations and (2) the public's use was not interfering with IEP's business conduct. This evidence draws a close comparison to the principle discussed in *H.F.L.P., LLC*, and affirmed in *Cook II*, regarding the "sound and . . . easily understandable" "reason" that an owner may have "a desire to accommodate others" when use of a "passageway over unenclosed and unimproved land" "result[s] in no immediate damage to him." *Cook II*, 172 Idaho at 877, 537 P.3d at 1238 (quoting *H.F.L.P., LLC*, 157 Idaho at 681–82, 339 P.3d at 566–67). The district court's conclusion that Spirit's use did not interfere with IEP's use of the land and the M-1 Road comports with this principle.

Here, the evidence Spirit claims shows adverse use is almost identical to the evidence offered by the claimants in *Fuquay* but rejected by this Court. *See Fuquay*, 162 Idaho at 379, 397 P.3d at 1138. In addition, when Neeser was asked whether "there [was] anything unique about [his] vehicle that would make it stand out from any other vehicle on the road," he responded, "no." In other words, it is unlikely IEP would know Neeser was using the road even if one of its employees saw Neeser's vehicle or a guest's vehicle on the road. Thus, the district court did not err in concluding that Spirit's use of the M-1 Road was not adverse and did not interfere with IEP's claim.

**E.  The district court did not err in concluding that IEP did not have actual or imputed knowledge that Spirit's use of the road exceeded that of the general public prior to 2016.**

In finding Spirit's use of the M-1 Road was open and notorious, the district court concluded that "Mr. Neeser's use of the M-1 Road to access Lots 3 and 4 . . . was sufficient to put [IEP] on notice that his use exceeded the scope of the general public's use for hunting and gathering firewood." This conclusion was based on Neeser's use of the road to bring tradesmen, building materials, equipment, and furniture to his lots, which exceeded the public's use of the road. But in ruling that Spirit did not establish the "actual or imputed knowledge of the owner of the servient tenement" element of its claim, the district court also found that Spirit failed to present evidence that IEP was actually aware of Neeser's use. It concluded that "[t]here is no evidence [IEP] was aware the use exceeded the scope of use by the general public." The district court then cited to *Backman*, 147 Idaho at 398–99, 210 P.3d at 83–84, for the proposition that when a claimant's use of the land mirrors that of the general public, knowledge cannot be imputed to the owner without other conduct indicating the adverse nature of the claim. *Backman* holds that this concept applies

even when the claimant has established open, notorious, continuous, and uninterrupted use under a claim of right for the statutory period. *Id.*

Notwithstanding the district court's finding that Neeser's use exceeded that of the general public for purposes of open and notorious use, *Backman* demonstrates that episodic use of a servient property, when shared with the general public, requires more to establish actual or imputed knowledge to the owner. It is true that "[g]enerally, where a claimant establishes open, notorious, continuous and uninterrupted use under a claim of right for the statutory period, knowledge of the owner may be presumed." *Id.* at 398, 210 P.3d at 83 (quoting *Hughes*, 142 Idaho at 481, 129 P.3d at 1230). "However, there are special considerations regarding notice to the owner when the claimant's use of the subject property is *shared* with the general public." *Id.* (emphasis added). In *Backman*, the claimant brought in "heavy equipment" for limited logging and road work, but "[o]utside of that," no evidence showed the use exceeded that of the public, excluding that period of intensive road work. *Id.* at 399, 210 P.3d at 84. To summarize *Backman*, intermittent periods of use exceeding that of the general public are not *ipso facto* sufficient to infer actual or imputed knowledge to the landowner of an adverse claim. *See id.*

While Spirit's episodic use of the M-1 Road for transporting building materials exceeded the general public's use "sufficient to put [IEP] on notice" for purposes of open and notorious conduct, the district court explained that Spirit did not take any action that would indicate adverse use. Thus, knowledge of adverse use could not be imputed to IEP under *Backman*. *See id.* Here, Spirit's intermittent use of the M-1 Road in a manner exceeding that of the general public (recreation) only lasted as long as needed to construct Spirit's structures and driveway. The evidence before the district court supported that once those projects ended, Spirit's use returned to recreational activities. Thus, the district court did not err in applying *Backman* to find Spirit's conduct did not impute knowledge to IEP.

## IV.    CONCLUSION

We affirm the district court's denial of Spirit's claim for a prescriptive easement. IEP is awarded costs on appeal as a matter of course pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices Brody and Zahn and Baskin, J. Pro Tem, CONCUR.

13